**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Isaac KATTAN–KASSIN, a/k/a Jaime Garcia, et al., Defendants-Appellees.**

No. 82–5175.

United States Court of Appeals, Eleventh Circuit.

Jan. 24, 1983.

Mervyn Hamburg, Washington, D.C., for plaintiff-appellant.

John F. Evans, Coral Gables, Fla., Theodore Klein, Thomas G. Murray, Miami, Fla., for defendants-appellees.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

In this appeal we are asked to interpret Section 1059(2) of the Bank Secrecy Act, 31 U.S.C.A. §§ 1051–62, 1081–83, 1101–05, 1121–22, 1141–43. The district court held that the government could bring only one felony charge under Section 1059(2). The government appeals the dismissal of other counts. We reverse.

According to the indictment filed against the four appellees, Andres Rodriguez and Francisco Navarro were the sole shareholders of the Popular Bank and Trust Co., Ltd., a Cayman Islands corporation with an office in Miami. Rodriguez also owned the Northside Bank of Miami and Navarro served as its vice-president. Appellee Francisco Bastida, though not an officer or owner of either bank, "issued orders [in his supervisory role] to employees" of both banks. Appellee Isaac Kattan-Kassin, a Colombian national, had accounts at Popular and Northside; his account at Northside was under the alias Jaime Garcia. The indictment charged a conspiracy occurring between May and September 1978, when more than seven million dollars was "laundered" through the two banks. Approximately $2.2 million in transactions was not reported as required by 31 U.S.C.A. § 1081 and 31 C.F.R. § 103.22,[1] and, for approximately $4.8 million, false currency transaction reports were filed in violation of 18 U.S.C.A. § 1001 (prohibiting the filing of false statements). The process allegedly occurred when certain customers who had accounts at both banks, including Kattan-Kassin, deposited funds at Popular that were then transferred to Popular's account at Northside. Northside transferred the funds into the customer's account at its bank. Counts III–XIV, at issue here, charged that Rodriguez, Navarro, and Bastida failed to file currency transaction reports on various dates between July 18, 1978, and September 11, 1978. Alleging that each failure to report was "part of a pattern of illegal activity involving transactions exceeding $100,000 in a twelve-month period," each of these counts charged a felony violation under 31 U.S.C.A. § 1059.

Navarro and Bastida each filed a motion to dismiss, asserting as one of the grounds

1. Title 31, U.S.C.A. § 1081 provides that the Secretary of the Treasury may promulgate regulations requiring that reports of domestic currency transactions be made. 31 C.F.R. § 103.-22 requires financial institutions to make reports of any transaction they process which involves more than $10,000 in currency. These reporting requirements were upheld against various constitutional challenges in *California Bankers Association v. Schultz*, 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974).

that Counts III–XIV were multiplicious.[2] The motions were referred to a magistrate who denied them but conditioned her denial by recommending that the government be required to choose only one of Counts III–XIV to prosecute. After a hearing, the district court entered an order that adopted the magistrate's recommendation.

## I. The Plain Meaning of Section 1059(2)

Section 1059 of 31 U.S.C.A., entitled "Additional criminal penalty in certain cases," provides:

Whoever willfully violates any provision of this chapter where the violation is—

(1) committed in furtherance of the commission of any other violation of Federal law, or

(2) committed as part of a pattern of illegal activity involving transactions exceeding $100,000 in any twelve-month period,

shall be fined not more than $500,000 or imprisoned not more than five years, or both.

These enhanced penalties apply only to the situations described in Section 1059. Section 1058 provides for misdemeanor penalties of $1,000, or imprisonment of one year, or both for any violation of the Bank Secrecy Act. The issue presented in this appeal is whether each violation that is "part of a pattern of illegal activity" under subsection 2 may be separately prosecuted as a felony under Section 1059, or whether a pattern of violations within a twelve-month period constitutes only a single felony offense.

The issue is one of first impression. The only other court to address Section 1059(2) did not reach this precise question. In *United States v. Beusch*, 596 F.2d 871 (9th Cir.1979), the Ninth Circuit reversed the district court's dismissal of a felony indictment that charged four violations of Section 1059(2) based on 377 misdemeanors. The government charged four felony violations since the actions occurred over a period of four years and the illegal transfers exceeded $100,000 in each year. The Ninth Circuit held that the felony indictment was improperly dismissed because "a series of misdemeanor violations of the act may ... call forth the increased penalties of subsection (2)." 596 F.2d at 878. The court remanded so that the district court could determine the "factual question of whether the acts which led to the misdemeanor convictions constituted a *pattern* of illegal activity within the meaning of § 1059(2)." *Id.* at 879 (emphasis in original). Because the government had charged only four felony violations, the court was not asked to reach the question of whether each violation could constitute a felony.

In interpreting Section 1059(2), we look first to the language of the statute itself. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *Fitzpatrick v. Internal Revenue Service*, 665 F.2d 327 (11th Cir.1982). The plain meaning of the statute must control unless the language is ambiguous or leads to absurd results, in which case a court may consult the legislative history and discern the true intent of Congress. *Jones v. Metropolitan Area Rapid Transit Authority*, 681 F.2d 1376, 1379 (11th Cir.1982). We reject appellees' contention that the language of Section 1059(2) is so vague and ambiguous that its plain meaning can be ignored. The language of the statute supports the government's position that each violation can be prosecuted as a felony so long as there are two or more acts constituting a "pattern of illegal activity involving transactions exceeding $100,000 in any twelve-month period." The dispositive question is whether Section 1059 focuses on punishing a pattern or each individual violation. By its use of the singular "violation" in the first sentence of the section and the phrase "part of" in subsection (2), the statute makes clear that each violation can be separately prosecuted. If Congress had intended to aggregate all violations in one twelve-month period into a single felony, there would be no reason to use the phrase "part of." It is a basic

---

**2.** Rodriguez did not file a separate motion to dismiss but adopted the motions filed by his co-defendants. Kattan-Kassin is not named in any of the counts alleged to be multiplicious.

principle of statutory construction that statutes should not be construed in a way that renders certain provisions superfluous or insignificant. *Woodfork v. Marine Cooks and Stewards Union,* 642 F.2d 966, 970–71 (5th Cir.1981).

The one problem with the plain meaning of the provision is that any time a pattern consisting of two or more actions involving transactions exceeding $100,000 is established, the government can indict under Section 1059(2) for two or more felonies. Thus, because the government could charge more than one felony, the maximum penalty of $500,000, five years imprisonment, or both could theoretically never be the actual maximum for an individual defendant. However, given Congress' expressed intent in the legislative history to mete out stiff penalties through Section 1059(2), we cannot say that this is a justification to permit only a single felony indictment. It only shows that the statute could have been better drafted to explicitly indicate that the maximum penalty applies to each violation. This lack of clarity does not rise to the level of an absurd result that would require us to ignore the plain meaning rule. On the contrary, the absurd result occurs if the reading advocated by appellees is adopted: after committing two violations involving more than $100,000 a violator would be immune from prosecution under Section 1059(2) for the remainder of the twelve-month period, subject only to the minor misdemeanor penalties of Section 1058.

Appellees contend that the plain meaning of the statute does not control because the section is vague and ambiguous. Curiously, their argument hinges on the fact that the singular "violation" is not determinative; they point out that even if it were plural, the statute's meaning would be the same due to the phrase "part of." This observation is accurate, but undercuts rather than supports their argument. Instead of making the statute ambiguous, the phrase "part of" reinforces and emphasizes the singular "violation."

The district court did not examine the language of the statute or even the legislative history in its opinion, although legislative history is the most commonly used extrinsic aid in interpreting a statute. Instead, it observed that there was a dearth of case law interpreting Section 1059 and so turned to cases analyzing the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C.A. §§ 1961–68. Although the plain meaning of the statute convinces us that Section 1059(2) can be used for more than one felony per year, we will discuss both the legislative history and the RICO statute.

## II. Legislative History

■ An examination of the legislative history and the purposes for which the Bank Secrecy Act was passed affirms the plain meaning of the statute. The first provision of the Act states that its purpose is to require reports and records that "have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C.A. § 1051. Its legislative history states that the domestic reporting requirements were enacted because law enforcement agencies found that the growth of financial institutions had been paralleled by an increase in criminal activity associated with them. H.R. No. 975, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Ad.News, 4394, 4395–97 [hereinafter "House Report"]. *See California Bankers Association v. Schultz,* 416 U.S. 21, 26–30, 94 S.Ct. 1494, 1500–1502, 39 L.Ed.2d 812 (1974). Congress evidently believed that to effectively fight petty criminals, members of the underworld, white collar criminals, and income tax evaders it was necessary for financial institutions to maintain adequate records. Although the new law would require financial institutions to keep such records, the contents of the records would be available to law enforcement agencies only "through existing legal process." House Report at 4395.

The rationale for requiring the reporting of large currency transactions was that "[t]he deposit and withdrawal of large amounts of currency or its equivalent . . . under unusual circumstances may betray a

criminal activity." House Report at 4396. Additionally, the House Report explained the reason for the added penalty of Section 1059:

> It should be noted that serious violations under this title may involve very large sums of money, and fines of as much as $10,000 or more might be shrugged off as a mere cost of doing business. To have any real deterrent effect, the potential fine must be large enough to have some real economic impact on potential violators.

House Report at 4406. *See United States v. Beusch, supra,* 596 F.2d at 879 ("Congress intended to impose more severe penalties in cases involving particularly serious violations"). The legislative history of Section 1059 demonstrates that Congress intended the section to be used to severely punish violators, supporting our holding that more than one violation within a twelve-month period may be prosecuted under Section 1059(2).

### III. Comparison to RICO

Appellees urge us to interpret Section 1059(2) by looking to precedent, common sense, and a similar statute. There is no precedent that is relevant since no court has addressed this issue. Common sense might be relevant when interpreting a specific word in a statute, *United States v. Porter,* 591 F.2d 1048, 1053 (5th Cir.1979), but the meaning of a particular word is not at issue here. However, a discussion of a similar statute is appropriate since the district court's decision was based on such a comparison.

The primary statute the district court turned to was RICO. The district court focused its examination of RICO on the meaning of "pattern" as used in that statute. It noted that the definition section of RICO defines pattern as requiring at least two acts of racketeering activity occurring within ten years of each other. § 1961(5).

It also discussed cases that had interpreted pattern under RICO and concluded that the word pattern has been construed "as requiring more than one instance of proscribed behavior, and, in addition, as requiring that these instances be related in some way beyond mere accident." R. 536. The district court erred in focusing its analysis on the meaning of pattern in RICO; the definition of pattern is not an issue in this appeal.[3] There has not even been an allegation by the appellees that the acts charged by the government do not constitute a pattern under Section 1059(2). What is at issue here is whether each act constituting a pattern may be charged separately.

■ The district court compared the Bank Secrecy Act to RICO because they both prohibit pattern offenses. It is questionable whether an analogy to RICO is even appropriate. Although RICO and the Bank Secrecy Act have some common purposes, they do not cover the same subject matter. In addition, the Bank Secrecy Act does not make a reference to RICO in its provisions or legislative history.[4] We have noted that even when the legislative history indicates that a particular statute is modeled after another statute, we must be cautious before incorporating the provisions of one into the other. *Jones v. Metropolitan Area Transit Authority, supra,* 681 F.2d at 1379–80 (reference in legislative history of Section 504 of the Rehabilitation Act that it was modeled after Section 601 of Title VI does not indicate an intent to incorporate all of Title VI into the Rehabilitation Act).

■ Even if we assume that it is appropriate to compare the Bank Secrecy Act to RICO, the analogy does not support appellees' argument because of two significant differences between the statutes. The predicate acts which form the basis of a RICO violation could not be punished under federal law unless the special requirements

---

3. Furthermore, as discussed below, even if pattern has exactly the same meaning in both statutes, Section 1059(2) prohibits "part of a pattern" while RICO prohibits a "pattern."

4. The Bank Secrecy Act and RICO were enacted by the same Congress. RICO was enacted on October 15, 1970, and the Bank Secrecy Act was enacted eleven days later, on October 26, 1970.

of RICO are met, as they are ordinarily prohibited only by state law. Because the pattern offense in RICO is something more than the sum of its parts, each part cannot be separately prosecuted. However, the predicate acts leading to a Section 1059(2) indictment also violate Section 1058, a lesser included offense of Section 1059. This structural difference is made explicit through the statutory language used in each act. RICO prohibits a "pattern of racketeering activity" while the Bank Secrecy Act prohibits each "part of a pattern." The likelihood that this distinction was deliberate is highlighted by the fact that the two laws were enacted by the same Congress within a few days of each other. *See* footnote 3.

After its analysis of the word "pattern" in the RICO statute, the district court concluded that Congress intended to require at least two violations of the Bank Secrecy Act in order to form a pattern of illegal activity under Section 1059(2) and that the relationship between the violations is defined in terms of the money involved and the time period over which the illegal acts occur. However, the court did not explain the reason why it stated that Section 1059 can be "invoked ... only once" within a twelve-month period, except to say that "it is difficult to understand how a misdemeanor act can, itself, be converted into a felony by the commission of other like misdemeanors unless the statutory mandate is quite clear."

Our examination of the statutory language has convinced us that the statutory mandate is quite clear. Section 1059 does not simply convert a misdemeanor into a felony by the commission of "other like misdemeanors." There is no monetary requirement for a violation of Section 1058; Section 1059 punishes serious violators who commit a pattern of offenses involving more than $100,000 in any twelve-month period. By wording the statute so that each "violation" that is a "part of" that pattern is prohibited by Section 1059(2), Congress clearly indicated that each violation could be prosecuted as a separate felony.

The order of the district court requiring the government to make an election of counts is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.