**UNITED STATES of America**

v.

**Wesley BUCEY.**

**No. 86 CR 644.**

United States District Court,
N.D. Illinois, E.D.

Jan. 4, 1988.

Roger Markley, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

David S. Mejia, Patrick A. Tuite, Tuite, Mejia & Giacchetti, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

The defendant Wesley Bucey was indicted on September 3, 1986 and charged with violations of 18 U.S.C. §§ 2, 1001, 1341, and 1503 and 31 U.S.C. §§ 5313 and 5322(b). The grand jury returned a superseding indictment on May 23, 1987 charging the defendant with the violation of 18 U.S.C. § 371 in addition to the violations in the original indictment. The defendant moves this court to dismiss the indictment pursuant to Federal Rules of Criminal Procedure 7 and 12 and the fifth and fourth amendments. In the alternative, the defendant moves to declare the offenses charged in Counts VIII and IX under 31 U.S.C. § 5322(a) rather than under 31 U.S.C. § 5322(b). The defendant also moves to strike prejudicial surplusage from the indictment. For the following reasons, the defendant's motions are denied.

The facts alleged in the indictment are as follows.[1] At all times pertinent to the indictment, Bucey and his co-conspirator Boston Witt were "persons" and acted in the capacity of "financial institutions" under 31 U.S.C. § 5312 and 31 C.F.R. § 103.11. In these capacities, Bucey and Witt were required to file a report for each transaction in currency in excess of ten thousand dollars conducted by, through, or to them, including the transfer, receipt, withdrawal and deposit of currency. Both Bucey and Witt were associated with the Nestor Barclay Corporation ("Nestor Barclay") and the Huguenot National Church ("Church"). The Church had a bank account at Freedom Federal Savings Bank ("Freedom Federal") in Glen Ellyn, Illinois. Freedom Federal is a "financial institution" under the relevant statutes cited above.

Count I of the indictment charges a violation of 18 U.S.C. § 371 and alleges that Bucey and Witt conspired to defraud the United State by impairing, obstructing and defeating the lawful government functions of the Department of the Treasury.[2] Specifically, Bucey and Witt impaired the collection of accurate data and reports relating to currency transactions in excess of ten thousand dollars at financial institutions, impaired the collection of accurate and truthful information and data to be used in determining the current sources and amounts of income, and obstructed the determination, assessment and collection of income taxes. Bucey and Witt also concealed the source of funds subject to forfeiture under the federal laws relating to controlled substances. Furthermore, the defendant counseled and advised others to prepare tax returns which fraudulently misstated the source and the amount of income in violation of 26 U.S.C. § 7206(2). Finally, Bucey and Witt caused the mail and interstate phone lines to be used with the intent of distributing the proceeds of narcotics distribution in violation of 18 U.S.C. § 1952(a)(1), (3).

The defendant and Witt carried out the scheme in the following manner. On or about October 30, 1985, Witt met two individuals in New Mexico whom he believed to be involved in the distribution of narcotics and dangerous drugs. These individuals were in fact two New Mexico State police officers acting as undercover government agents. On November 4, 1985, in Las Vegas, Witt offered to help the individuals launder their cash by portraying it as income received for services rendered to a church in the Chicago area. Witt and his partner Bucey advised the individuals that their money would be portrayed as contri-

---

1. All allegations of the indictment are taken as true when considering a motion to dismiss an indictment. *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332–33 n. 16, 96 L.Ed. 367 (1951).

2. In pertinent part, 18 U.S.C. § 371 states:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

butions that the Church received on behalf of earthquake disaster victims and deposited in Freedom Federal. The defendant, who would receive a fee for his efforts, would then funnel the money back to the individuals as a fee for services never rendered and provide false documentation for the transactions. On or about January 23, 1986, the defendant and Witt also arranged to use the Church as a front to help a third government agent, James Dembitz, avoid having his money traced by the government. The transactions with this third agent were also arranged so that it would appear that the agent was receiving cash from the Church for services that were purportedly, but never actually, rendered. On or about April 24, 1986, Bucey met a fourth undercover government agent, Richard Ahern, who was posing as a businessman seeking to find a way to have his business avoid taxes. Bucey advised Ahern that he could create sham donations of property to reduce Ahern's taxes and that the donations would be based on backdated valuations. On or about June 16, 1986, Bucey requested that Dembitz send him a copy of the Federal Grand Jury subpoena that Dembitz said he had received to appear before the grand jury that was investigating Bucey in Chicago. Bucey advised Dembitz to give false testimony to the grand jury. On June 16, 1986, Bucey heard that Ahern had been subpoenaed to testify before the grand jury. He advised Aherns that Aherns would have no records to present to the grand jury and that his memory, however faulty, was all that he had.

There are ten other counts in the indictment. Counts II through VII allege that the defendant violated 18 U.S.C. §§ 1341, 1343 by using the United States mail and wire communications to execute the above scheme to defraud. Counts VIII and IX allege that the defendant violated 31 U.S.C. §§ 5313 and 5322(b) by intentionally failing to file required Currency Transaction Reports ("CTR") with the Internal Revenue Service ("IRS") following transactions involving currency in excess of ten thousand dollars. These failures to file CTRs were part of a pattern of illegal currency trans-

actions exceeding one hundred thousand dollars between January and February of 1986 and were committed in furtherance of and while violating 18 U.S.C. § 1001. Counts X and XI allege that the defendant violated 18 U.S.C. §§ 2 and 1001 by concealing material facts and by preparing false and misleading CTRs to be filed with the IRS. Finally, Count XII alleges that the defendant violated 18 U.S.C. § 1503 by corruptly endeavoring to influence, obstruct and impede the due administration of justice by encouraging an undercover government agent who had purportedly been subpoenaed to testify before the grand jury to give false and misleading testimony when appearing before that grand jury.

I

### Motion To Strike Surplusage

■ The defendant moves this court to strike from the indictment all references to narcotics, dangerous drugs and drug dealing. Allegations will be stricken as surplusage only if "it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." Wright & Miller, Federal Practice and Procedure § 127 (1982). Simply put, legally relevant information is not surplusage. *United States v. Richter*, 610 F.Supp. 480, 496 (N.D.Ill.1985), *aff'd*, *United States v. Mangovski*, 785 F.2d 312 (7th Cir.), *aff'd*, *United States v. Konstantinov*, 793 F.2d 1296 (7th Cir.), *cert. denied*, 479 U.S. 855, 107 S.Ct. 191, 93 L.Ed.2d 124 (1986); *See also United States v. Climatemp, Inc.*, 482 F.Supp. 376, 391 (N.D.Ill.1979), *aff'd*, 705 F.2d 461 (7th Cir.), *cert. denied sub nom.*, *Fakter v. United States*, 462 U.S. 1134, 103 S.Ct. 3116, 77 L.Ed.2d 1370 (1983). Consequently, due to the exacting standard, motions to strike information as surplusage are rarely granted. *See United States v. Fischbach and Moore, Inc.*, 576 F.Supp. 1384 (W.D.Pa.1983); Wright & Miller, Federal Practice and Procedure § 127 (1982).

In this case, the defendant argues that the allegations of drug trafficking and narcotics transactions, which would show that

the money involved came from illegal sources, are irrelevant. Simply put, whether the money involved in this case came from legitimate or illegitimate sources is not relevant to the charges contained in the indictment. The government argues that the information at issue is relevant to both the conspiracy and the mail and wire fraud charges. The court agrees. Count I of the indictment charges the defendant with a conspiracy to defraud the United States in several different ways. The source of the money involved is directly relevant to at least three of the means used in the conspiracy to defraud the United States.[3] The evidence of the allegedly illegitimate source of the funds at issue is also relevant with regard to explaining the purpose behind the money laundering scheme alleged in Counts II through VII. The Seventh Circuit has held "that evidence of other crime may be presented when they are so blended or connected with the one on trial that proof of one incidently involves the other or *explains the circumstances thereof* or tends logically to prove any element of the crime charged" (emphasis added). *United States v. Dorn,* 561 F.2d 1252, 1258 (7th Cir.1977); *See also United States v. Moreno–Nunez,* 595 F.2d 1186, 1188 (9th Cir.1979) (prior crime evidence can legitimately be offered to elucidate the background and development of the conspiracy); *United States v. Wilson,* 578 F.2d 67, 72 (5th Cir.1978) (courts and treatises have approved and allowed "the introduction of evidence of other criminal activity in order

to complete the story of the crime on trial"). The court may consider whether evidence of other acts would help the jury understand the factors surrounding the crime at issue and whether the absence of evidence concerning the other acts would leave a "conceptual void" in the story. *See United States v. Hattaway,* 740 F.2d 1419, 1425 (7th Cir.), *cert. denied,* 469 U.S. 1089, 105 S.Ct. 599, 83 L.Ed.2d 708 (1984), *cert. denied sub nom., Curran v. United States,* 469 U.S. 1028, 105 S.Ct. 448, 83 L.Ed.2d 373 (1984). In *Hattaway,* the court allowed the admission of "disgusting and offensive" acts to help explain the circumstances of the crime charged when these acts were "intricately related" to the facts of the case.[4] *Id.* 740 F.2d at 1425. In this case, the evidence of the narcotic trafficking would be useful in helping the jury understand the charges as alleged in Counts I through VII of the indictment and their surrounding circumstances. Since the allegations that the defendant finds objectionable are legally relevant, the motion to strike is denied.

## II

### *Motion to Declare Counts VIII and IX Offenses Under 31 U.S.C. § 5322(a)*

■ The defendant moves the court to declare that Counts VIII and IX charge offenses under 31 U.S.C. § 5322(a) rather than under 31 U.S.C. § 5322(b).[5] The defendant argues that a violation of the false statement provision of 18 U.S.C. § 1001

---

**3.** In Count I the defendant is charged, *inter alia,* with conspiring to conceal the source of funds subject to forfeiture under the federal narcotics laws, conspiring to use the mail and wire lines to travel in interstate commerce in furtherance of an illegal narcotics business, and with conspiring to obstruct the Department of Treasury by impairing the collection of accurate and truthful information used in determining the correct sources and amounts of income.

**4.** The defendants in *Hattaway* were charged with conspiracy, kidnapping, a violation of the Mann Act, and the unlawful use of firearms "in connection with the alleged abduction and holding of a North Carolina woman." *Hattaway,* 740 F.2d at 1422. The court allowed the admission of evidence concerning an uncharged murder as well as evidence concerning the unsavory lifestyle of the defendants because the probative

value of this evidence with regard to the crimes charged outweighed any risk of unfair prejudice. *Id.* at 1424–25.

**5.** In pertinent part, 31 U.S.C. § 5322 states:

(a) A person willfully violating this subchapter or a regulation prescribed under this subchapter ... shall be fined not more than $1000, imprisoned for not more than one year, or both.

(b) A person willfully violating this subchapter or a regulation prescribed under this subchapter ... while *violating another law of the United States or as part of a pattern of illegal activity involving transactions of more than $100,000 in a 12–month period,* shall be fined not more than $500,000, imprisoned for not more than five years, or both.

cannot be used as the predicate offense required under 31 U.S.C. § 5322(b). The Supreme Court has repudiated the defendant's reasoning in *United States v. Woodward*, 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed. 2d 518 (1985). In *Woodward*, the Court held that 18 U.S.C. § 1001 is not a lesser included offense of 31 U.S.C. § 5322(a). *Woodward*, 469 U.S. at 108, 105 S.Ct. at 612. Accordingly, an individual could be simultaneously prosecuted for a violation of both provisions. *Id.* 469 U.S. at 108–10, 105 S.Ct. at 612–13. Since violations of § 1001 and § 5322(a) constitute distinct crimes, a violation of § 1001 can properly be used as a predicate offense under § 5322(b) notwithstanding the fact that the exact same conduct could violate both provisions.

■ The defendant states in the alternative that Counts VIII and IX are multiplicitous and that only one violation of § 5322(b) is alleged. The defendant argues that the amounts of money involved in the transactions alleged in Counts VIII and IX independently fail to satisfy the one hundred thousand dollar transactional requirement of § 5322(b). The forty-two thousand dollars at issue in Count VIII must be aggregated with the eighty-four thousand dollars at issue in Count IX to reach the transactional requirement and allege a violation of § 5322(b). This issue has not been frequently considered by the court and the authority which exists is somewhat conflicting. The Eleventh Circuit has held that "each reporting violation could be prosecuted as a separate felony where each violation has part of a pattern of illegal activity meeting the monetary and time threshold" as prescribed by the statute. *United States v. Valdes–Guerra*, 758 F.2d 1411, 1414 (11th Cir.1985) (citing *United States v. Kattan–Kassin*, 696 F.2d 893, 895 (11th Cir.1983)). In a recent case, the First Circuit adopted the above position and held that "if a pattern of illegal activity involving transactions exceeding $100,000 is proven [within a one year period], each violation is a felony." *United States v. Bank of New England, N.A.*, 821 F.2d 844, 855 (1st Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987).

Thus, the Eleventh and First Circuits support the government's contention. The Ninth Circuit has held, on the other hand, that reporting violations under Title 31 will be charged as individual felonies under § 5322(b) only after the one hundred thousand dollar threshold has been reached. *United States v. So*, 755 F.2d 1350, 1355 (9th Cir.1985). Thus, under this rationale, Bucey could only be charged with one violation of § 5322(b). There are no Seventh Circuit cases addressing this precise issue.

The plain meaning of the statute as well as its legislative history persuades this court that the interpretations given by the Eleventh and First Circuits should control. This court will first look to the plain meaning of the language of the statute when construing a provision. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Graczyk v. United Steelworkers of America*, 763 F.2d 256 (7th Cir.), *cert. denied,* 474 U.S. 970, 106 S.Ct. 335, 88 L.Ed.2d 319 (1985). Under the pertinent portion of § 5322, a person who is "willfully violating this subchapter ... *as part of* a pattern of illegal activity involving transactions of more than one hundred thousand dollars, a twelve-month period will be punished" (emphasis added). 31 U.S.C. § 5322(b). The words "as part of" denote an intention to treat each violation individually as opposed to punishing the pattern as a whole. *See Bank of New England*, 821 F.2d at 854 (Moreover, "an absurd result can occur if the felony is limited to the pattern of violation."); *See also Kattan–Kassin*, 696 F.2d at 896.

The remaining question, which is left unanswered by the statutory language, is whether violations occurring before the one hundred thousand dollar threshold is reached should be treated as felonies. It is on this point that the circuits split. When the statutory language "is ambiguous or leads to absurd results ... a court may consult the legislative history and discern the true intent of Congress." *Id.* 696 F.2d at 895. The legislative history of this section clearly shows Congress' intent to severely punish violators. *See* H.R. No. 975,

91st Cong., 2d Sess., *reprinted in* 1970 U.S. Code Cong. & Ad. News, 4394, 4395–4406; *See also Bank of New England,* 821 F.2d at 854; *Valdes–Guerra,* 758 F.2d at 1414; *Kattan–Kassin,* 696 F.2d at 897. The best way to impose severe punishment is by treating each violation as a felony when it occurs as part of a pattern with the requisite transactional amount and within the requisite time period. *See Bank of New England,* 821 F.2d at 854. Accordingly, the court denies the defendant's motion to treat the violations alleged in Counts VIII and IX as one violation of § 5322(b).

## III

*Motion to Dismiss the Indictment*

The defendant moves the court to dismiss the indictment on numerous grounds. A proper indictment should fulfill the following three functions:

> [F]irst, it should state all of the elements of the offense charged; second, it should inform the defendant of the nature of the charge so that he may prepare a defense; and third, it must enable the defendant to plead the judgment as a bar to any later prosecution for the same offense.

*United States v. Gironda,* 758 F.2d 1201, 1209 (7th Cir.1985); *See also United States v. Neapolitan,* 791 F.2d 489 (7th Cir.), *cert. denied sub nom., Messino v. United States,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). The "court should consider the challenged count as a whole and should refrain from reading it in a hypertechnical manner." *Gironda,* 758 F.2d at 1209. Finally, the indictment should be read to " 'include facts which are necessarily implied by the allegations made therein.... Even if an essential element in an averment in an indictment is faulty in form, if it may by fair construction be found within the test, it is sufficient.' " *Id. quoting United States v. Anderson,* 532 F.2d 1218, 1222 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976).

■ The defendant first argues that Count I should be dismissed because it is insufficient to allege a violation of law.

The defendant asserts that the government failed to allege illegal conduct arising out of a violation of some legal duty of either a "person" or a "financial institution" under 31 U.S.C. §§ 5313 and 5322. The defendant attempts to buttress his argument by asserting a defense, namely that the defendant and his business are recognized as a tax-exempt religious institution and are not covered by the relevant statutes. The determination of the validity of a defense or any other questions of fact is improper when considering a pretrial motion to dismiss an indictment. *See United States v. Ayarza–Garcia,* 819 F.2d 1043, 1048 (11th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987); *United States v. Caceres–Prado,* 601 F.Supp. 468, 470 (D.P.R.1984). The indictment alleges that the defendant and Witt were "persons" and acted in the capacity of a "financial institution" under 31 U.S.C. §§ 5312, 5313 and 31 C.F.R. § 103.11 by engaging as a business dealing in currency and transmitting funds abroad for others. Indictment, ¶ (c) at 1–2. The indictment also alleges that the defendant performed various acts in violation of his legal duty as a "financial institution" under the relevant statutes. *See e.g.,* Indictment, ¶¶ 6, 7 at 5.

■ The defendant next attacks Count I of the indictment on the grounds that it violates the fourth and fifth amendments of the Constitution. The defendant argues that the reporting provisions of 31 U.S.C. § 5313 and 31 C.F.R. 103.11–103.25, which require a financial institution to disclose the source of funds for covered transactions, would in this case violate the fifth amendment by requiring the reporting of self-incriminatory information. The allegedly self-incriminating information is that the funds involved derived from a source subject to forfeiture under federal narcotics laws. Several courts have considered whether the domestic reporting requirements in § 5313 and the analogous import and export reporting requirements of § 5316 violate the fifth amendment. The constitutionality of these sections has been upheld in all cases. The individual's right to avoid self-incrimination must be bal-

anced against the societal interest in disclosure when a statute compels disclosure of information of a potentially self-incriminating nature. *See California v. Byers*, 402 U.S. 424, 427–28, 91 S.Ct. 1535, 1537–38, 29 L.Ed.2d 9 (1970); *United States v. Dichne*, 612 F.2d 632, 638 (2d Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed. 2d 760 (1980). There are a number of factors which must be considered when "determining when the threat of self-incrimination from a disclosure statute is so offensive to the mandate of the fifth amendment as to render the statute unconstitutional." *Dichne*, 612 F.2d at 638. The court must determine whether the challenged provisions create "substantial hazards of self-incrimination" because (1) they are directed toward a "highly selective group inherently suspect of criminal activities," as opposed to the general public; (2) the provisions inquire into an area "permeated with criminal statutes" as opposed to an "essentially noncriminal and regulatory area;" and (3) the information provided "would surely prove a significant 'link in a chain' of evidence tending to establish his guilt." *See Byers*, 402 U.S. at 428–30, 91 S.Ct. at 1538–39, *quoting Albertson v. SACB*, 382 U.S. 70, 79, 86 S.Ct. 194, 199, 15 L.Ed.2d 165 (1965); *Marchetti v. United States*, 390 U.S. 39, 48, 88 S.Ct. 697, 702, 19 L.Ed.2d 889 (1968).

The reporting requirements of § 1513 do not create a "substantial hazard of self-incrimination." The statute is directed toward any "financial institution" which is involved in a transaction in currency of more than ten thousand dollars. *See* 31 C.F.R. § 103.22. The entities covered by the statute are not inherently suspect of criminal activity. *See United States v. Sanchez–Vasquez*, 585 F.Supp. 990, 996 (N.D.Ga.1984); *See also Dichne*, 612 F.2d at 639–40; *United States v. Des Jardins*, 747 F.2d 499, 509 (9th Cir.1984). Involvement in a currency transaction of more than ten thousand dollars is not inherently illegal and there is no reason to suspect that such involvement is generally connected with criminal activity. *See Des Jardins*, 747 F.2d at 509 (parallel analysis concerning § 5316); *See also United States v.*

*Shearson Lehman Brothers, Inc.*, 650 F.Supp. 490, 501–02 n. 14 (E.D.Pa.1986). Moreover, Congress' express intent is that these reports and records "have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." 31 U.S.C. § 1511. By contrast, "every reporting requirement struck down by the Supreme Court ... almost necessarily pertained to individuals involved in criminal activities." *See Des Jardins*, 747 F.2d at 509 (numerous examples are cited). Furthermore, the reporting requirement does not inquire into an area "permeated with criminal statutes." In every case where the Supreme Court has held a reporting provision to be unconstitutional, "the reporting individual was required to reveal to the government information which would almost necessarily provide the basis for criminal proceedings against him for the very activity that he was required to disclose." *Dichne*, 612 F.2d at 640.

Finally, the reporting requirement requires, *inter alia*, that the identity of the person who conducted the transaction with the financial institution as well as the identity of the individual or organization for whom the transaction was completed be disclosed. This information, which is "at best tangentially related to criminal activity," is not in any event a "significant 'link of a chain' of evidence tending to establish guilt." *Des Jardins*, 747 F.2d at 509; *See also Sanchez Vazquez*, 585 F.Supp. at 996. Thus, this provision does not create "a substantial hazard of self-incrimination" and the public need for disclosure, which is the other half of the balancing test, need not be considered. *See Des Jardins*, 747 F.2d at 509. Even so, the court notes that Congress decided to pursue substantial nonprosecutorial as well as prosecutorial interests when enacting the reporting requirements. *See Dichne*, 612 F.2d at 640. Thus, there is a substantial societal interest in disclosure.

The defendant also alleges that Count I violates the fourth amendment. The cryptic manner in which the defendant presents his argument is indicative of its

utter lack of merit.[6] The fourth amendment "protects citizens only from 'unreasonable searches and seizures.'" *Richter*, 610 F.Supp. at 492. The defendant has alleged neither a "search," which occurs "when an expectation of privacy that society is prepared to consider reasonable is infringed," nor has he alleged a "seizure," which occurs "when there is some meaningful interference with an individual's possessory interests" in property. *See United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *See also Richter*, 610 F.Supp. at 492. Consequently, no fourth amendment injuries have been suffered in this case. The defendants' argument would fail even if he had alleged an "unreasonable search or seizure." The Supreme Court has held that there is no legitimate expectation of privacy in records kept by a bank pursuant to the recording provisions of the Bank Secrecy Act, 31 U.S.C. §§ 5311–5322. *See United States v. Miller*, 425 U.S. 435, 442–43, 96 S.Ct. 1619, 1623–24, 48 L.Ed.2d 71 (1976); *See also United States v. Kaatz*, 705 F.2d 1237, 1242 (10th Cir.1983); *Richter*, 610 F.Supp. at 492. Therefore, a government review of such records would not be a "search" for fourth amendment purposes. Accordingly, the defendant's fourth amendment claim fails.

■ The defendant further argues that Count I should be dismissed because it is vague. Specifically, Count I "fails to set forth the elements of an offense or to fairly inform defendant of the charge against him which he must defend." Motion to Dismiss at 6. Count I alleges a violation of 18 U.S.C. § 371.[7] Section 371 can be violated by either conspiring to commit substantive federal offenses or by conspiring to "commit frauds against the United States which are not made criminal by other legislation." *Richter*, 610 F.Supp. at 485.[8] Count I clearly alleges that the defendant and Witt conspired to violate 26 U.S.C. § 7206(2) and 18 U.S.C. § 1952(a)(1) and (c) as well as to defraud the United States by conspiring to obstruct the lawful functions of the Department of the Treasury. Indictment at 3–4. Moreover, the government has alleged numerous overt acts. *Id.* at 7. The indictment contains sufficient allegations to enable the government to prove a section 371 violation at trial. *See United States v. Browning*, 723 F.2d 1544, 1546 (11th Cir.1984). Consequently, Count I sufficiently states an offense and informs the defendant of the charges against him. *See United States v. Turkish*, 623 F.2d 769, 771 (2d Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981); *United States v. Watson*, 594 F.2d 1330, 1341 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979) ("[a] charge of conspiracy is sufficient if it follows the statutory language and contains an adequate statement of an overt act to effectuate the object of the conspiracy, and the requisite overt act need not be criminal in itself.").

■ Finally, the defendant attacks Count I on two additional grounds. First, the defendant argues that it was legally and factually impossible for him to commit the offenses charged in the indictment generally because all of the money involved was government generated. Thus, the defendant was under no duty to file CTRs for the money deposited because 31 C.F.R. § 103.22(b)(2)(iii) permits a bank to exempt

---

**6.** The defendant's argument consists of the following curious statement: "An ancillary constitutional defendant of such an application of the act is the Fourth Amendment bar to unreasonable searches and seizures." Motion to Dismiss at 6.

**7.** *See* text of the statute at n. 2.

**8.** In *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1923), the Supreme Court held that a conspiracy to defraud the United States

means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane or the overreaching of those charged with carrying out the government's intention.

transactions involving government funds.[9] The defendant's argument has been considered and rejected by other courts. The language of the exemption suggests that it applies to "transactions *by* government *agencies* in their normal course of governmental business" and not to the instant situation where an individual deposited government funds in the erroneous belief that they came from a private individual. (emphasis in original). *Richter*, 610 F.Supp. at 490–91; *See also United States v. Hernando Ospina*, 798 F.2d 1570, 1579–80 (11th Cir.1986). Moreover, policy reasons also favor this interpretation of the exemption. *See Richter*, 610 F.Supp. at 491 ("[i]f we were to read the exemption as broadly as do the defendants, we would cripple most, if not all, government undercover operations in the area"). Second, the defendant argues, particularly in reference to Counts VIII and IX, that the indictments should be dismissed because the government manufactured jurisdiction. The defendant relies on a Second Circuit case where the government was held to have manufactured jurisdiction by using an interstate phone call "for the precise purposes of transforming a local bribery offense into a federal crime." *United States v. Archer*, 486 F.2d 670, 681 (2d Cir.1973). The facts in *Archer* showed an extraordinarily overzealous effort by the government agents. The defendant "neither agreed to do nor did anything with interstate consequences; the federal officials did it all." *United States v. Podolsky*, 625 F.Supp. 188, 194 (N.D.Ill.1985) (Aspen, J.), *aff'd*, 798 F.2d 177 (7th Cir.1986). The *Archer* decision has been narrowly read and universally distinguished. *See Podol-*

*sky*, 798 F.2d at 180 ("no conviction has ever been set aside on the sole basis of the principle announced by [*Archer*], even in the Second Circuit," and the vitality of the "manufactured" jurisdiction principle is in doubt); *See also United States v. Anderson*, 809 F.2d 1281 (7th Cir.1987) (rejecting *Archer*). In this case, the indictment alleges numerous instances of where the defendant and Witt crossed state lines to facilitate their conspiracy and other violations. *See, e.g.*, Indictment at 8–16. The doctrine of manufactured jurisdiction has no application to this case. The defendant's motion to dismiss Count I is denied.

## IV

### Motion to Dismiss Counts II Through XI of the Indictment

The indictment incorporates portions of Count I into Counts II through XI. As a result, the defendant incorporates his various arguments to dismiss Count I into his motion to dismiss Counts II through XI. This motion to dismiss Counts II through XI is denied for the reasons stated above.

## V

### The Mail and Wire Fraud Counts

■ The defendant attacks Counts II through VII on three grounds. First, the defendant claims that the indictment insufficiently states a cognizable scheme to defraud pursuant to 18 U.S.C. § 1341 by alleging that the government was defrauded out of income taxes due and owing.[10] The "objective of the mail fraud statute is to safeguard the United States Postal Ser-

---

9. 31 C.F.R. § 103.22(b)(2)(iii) states in pertinent part that:
   (2) A bank may exempt from the reporting requirements of paragraph (a) of this section the following:

   (iii) Deposits or withdrawals, exchanges of currency or other payments and transfers by local or state governments, or the United States or any of its agencies or instrumentalities.

10. In pertinent part, 18 U.S.C. § 1341 states that: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for

obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do [uses the mails or causes them to be used,] shall be fined not more than $1,000 or imprisoned not more than five years, or both.
   The analysis of Counts II through V, which allege mail fraud violations under § 1341, is also pertinent to Counts VI and VII, which allege wire fraud violations under § 1343. *See United States v. Feldman*, 711 F.2d 758, 763 n. 1 (7th Cir.1983), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1984).

**1088**

vice from being used to effect schemes to defraud." *United States v. Lovett*, 811 F.2d 979, 983 (7th Cir.1987); *See Parr v. United States*, 363 U.S. 370, 389, 80 S.Ct. 1171, 1182, 4 L.Ed.2d 1277 (1960). The government must prove a scheme to defraud and the use of the United States mails in furtherance of that scheme to establish a violation of § 1341. *Lovett*, 811 F.2d at 983–84; *See also Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *United States v. Keane*, 522 F.2d 534, 544 (7th Cir.1975), *cert. denied*, 474 U.S. 976, 96 S.Ct. 1481, 47 L.Ed. 2d 746 (1976). The "ultimate success of the fraud [or] the actual defrauding of a victim" are not necessary for a successful prosecution. *Keane*, 522 F.2d at 545. The Supreme Court has recently limited the application of § 1341 to the protection of property rights whether tangible or intangible. *See McNally v. United States*, 483 U.S. ——, ——, 107 S.Ct. 2875, 2879–80, 97 L.Ed.2d 292 (1987); *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). In this case, the issue is whether the indictment adequately alleges a scheme to deprive the government of property. The indictment alleges that the defendant and Witt "devised and intended to devise a scheme and artifice to defraud the United States of money and property, that is, income taxes." Indictment at 8. The government has a property right in tax revenues on the date that they accrue. *See Manning v. Seely Tube & Box Co.*, 338 U.S. 561, 566, 70 S.Ct. 386, 389, 94 L.Ed. 346 (1950) ("Congress intended the United States to have the use of money lawfully due when it became due"); *See also United States v. Keltner*, 675 F.2d 602, 604 (4th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982) (the government is entitled to tax revenues as soon as the taxable year ends). Therefore, a scheme to defraud the government of tax revenues is cognizable under § 1341. *See, e.g., United States v. Melvin*, 544 F.2d 767, 773 (5th Cir.), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587 (1977).[11]

The defendant further alleges that the mail fraud counts are deficient to adequately allege that the defendant "caused" the mail to be sent and delivered by the postal service. Counts II through V of the indictment allege mail fraud violations. Counts II and III allege that the defendant knowingly used the United States mail to execute a scheme to defraud by causing two CTRs to be sent through the mail from Freedom Federal to the IRS center in Detroit, Michigan. Counts IV and V allege the defendant knowingly used the United States mail to execute a scheme to defraud by causing mail to be sent from Agent Dembitz in Arizona to an address in Glen Ellyn, Illinois on two separate occasions. *See* Indictment at 17–20. The courts have given a very broad interpretation to the statutory language of what "causes" mail to be sent. The government must show that the defendant "knowingly caused the mails to be used in furtherance of his scheme." *United States v. Draiman*, 784 F.2d 248, 251 (7th Cir.1986). A defendant need not actually intend, agree to or even know of a specific mailing to "cause" mail to be sent as long as he or she "does an act with knowledge that the use of mails will

**11.** The defendant cites *United States v. Riky*, 669 F. Supp. 196 (N.D.Ill.1987) (Duff, J.), in support of its argument that the indictment does not allege a cognizable scheme to defraud in the instant case. As a general matter, some portions of *Riky* are no longer valid in light of the Supreme Court's decision in *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). *See, e.g., Riky*, 669 F.Supp. at 198 (scheme to defraud must infringe on a *tangible* property right). Moreover, the indictment in *Riky* is hardly the mirror of the indictment in this case as suggested by the defendant as there are additional charges and fewer counts alleged in this indictment. Finally, there is a significant difference with regard to how the subject of income taxes is raised in the respective indictments. In *Riky*, the court stated that "[w]hile the indictment suggests that the defendant's scheme may have deprived the government of tax revenues, it does not allege *any* facts from which this court could conclude that this was in fact the case." (Emphasis added.) *Id.* at 198. By contrast, the indictment in this case alleges that the defendant performed several acts with the intent of helping various individuals to illegally evade their income tax obligations. *See, e.g.*, Indictment at 8–10, 15–16. In contrast to *Riky*, the chain of causation is *not* too attenuated to permit a reasonable inference that the government was deprived of a tangible interest. *See Riky*, 669 F.Supp. at 199.

follow in the ordinary course of business, or where such can reasonably be foreseen...." *See Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1953); *United States v. Wormick,* 709 F.2d 454, 461 (7th Cir.1983) (a defendant "can be held accountable for mailings caused by other members, whether or not he knew of or agreed to any specific mailing."); *See also United States v. Galloway,* 664 F.2d 161, 163 (7th Cir. 1981), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *Ohrynowicz v. United States,* 542 F.2d 715 (7th Cir.), *cert. denied,* 429 U.S. 1027, 97 S.Ct. 650, 50 L.Ed.2d 630 (1976). The indictment in this case alleges that the defendant actually directed or at least had knowledge that the United States mail would be used in furtherance of his scheme to defraud.[12]

### VI

#### *Motion to Dismiss Counts X and XI*

■ The defendant attacks Counts X and XI, which charge violations of 18 U.S. C. § 1001, on the grounds that they allege no falsity and, consequently, are impermissibly vague. The indictment alleges that the defendant intentionally concealed the true identity of the individual who conducted the transaction and the individual for whom the transaction was completed in both counts. *See* Indictment ¶¶ 3, 4 at 25, ¶¶ 3, 4 at 26. Section 1001 can be violated by a false representation or a concealment of a material fact.[13] *See United States v. Tobon–Builes,* 706 F.2d 1092, 1096 (11th Cir.1983); *Richter,* 610 F.Supp. at 487.

Under section 1001, concealment violations "relate to the nondisclosure of statements required by statute, government regulation or form." *Tobon–Builes,* 706 F.2d at 1096. In this case, the indictment alleges active concealment of material facts that were required to be disclosed by the CTRs (I.R.S. Form 4789) that were involved in both counts. Consequently, Counts X and XI state an offense under § 1001 and the defendant's motion to dismiss them is denied.

### VII

#### *Motion to Dismiss Count XII*

■ The defendant launches a final barrage of objections in an attempt to obtain the dismissal of Count XII which alleges a violation of 18 U.S.C. § 1503.[14] The defendant states that Count XII alleges insufficient facts to give the defendant notice of what offense he is charged with, that the indictment would not enable the defendant to plead double jeopardy against a later prosecution, and that the indictment does not allege that there was an issuance of a grand jury subpoena to a grand jury witness. The government must show that a "defendant knew of the pending judicial proceeding and specifically intended to impede its administration" to prove a violation of § 1503. *United States v. Guzzino,* 810 F.2d 687, 696 (7th Cir.1987). No actual act of a grand jury is required "before a grand jury investigation can be held to be 'pending' within the meaning of the statute." *United States v. McComb,* 744 F.2d 555, 560 (7th Cir.1984). Rather, a grand jury is deemed "pending" when a " 'sub-

---

**12.** The defendant also objects to Counts II through IX on the grounds that they fail to provide adequate notice to the defendant of the nature of the cause against which he is required to defend. The court rejects this contention. The counts at issue are alleged in sufficient detail to give adequate notice of the charges that the defendant must defend against.

**13.** In pertinent part, 18 U.S.C. § 1001 provides: Whoever, in any matter within the jurisdiction of any department or agency of the United States, knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false or fictitious or fraudulent statements or representations, or makes or uses any false writing

or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**14.** In pertinent part, 18 U.S.C. § 1503 states: Whoever corruptly or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate or impede any grand or petit juror ... or corruptly or by threats of force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

poena is issued in furtherance of an actual grand jury investigation, i.e., to secure a presently contemplated presentation of evidence before the grand jury.'" *Id.* at 561, *quoting United States v. Walasek,* 527 F.2d 676, 678 (3d Cir.1975). The government can properly charge a defendant "under § 1503 with interfering with the due administration of justice when the conduct of the defendant relates to tampering with a witness." *United States v. Rovetuso,* 768 F.2d 809, 822 (7th Cir.1985), *cert. denied,* 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed. 2d 809 (1986), *cert. denied, Williams v. United States,* 476 U.S. 1106, 106 S.Ct. 1951, 90 L.Ed.2d 360 (1986).

 Count XII of the indictment contains the following allegations. The Special April 1984 Grand Jury ("Grand Jury") was conducting an investigation into potential violations of federal criminal laws in this district by the defendant and Witt. The defendant, who knew of the existence of the Grand Jury investigation, also knew that undercover agent Dembitz, who was known to the defendant as "James O'Brien," had purportedly been subpoenaed to appear before the Grand Jury. Dembitz was to give testimony and produce records concerning his dealings with Bucey and the Church. Bucey corruptly endeavored to influence, obstruct, and impede the due administration of justice by directing Dembitz to give false and misleading testimony when appearing before the Grand Jury. Thus, the indictment clearly alleges that the defendant knew of a pending grand jury investigation and that he intentionally tried to impede its administration. Furthermore, counseling an individual to lie when appearing as a witness before a grand jury is an "endeavor" under the statute. *See United States v. Buffalano,* 727 F.2d 50, 53 (2d Cir.1984) (an endeavor is any effort to achieve the purposes that the statute was designed to counter). Conse-

quently, Count XII states an offense with sufficient clarity to give the defendant notice of the charges against him and to allow him to plead double jeopardy in any later prosecution.[15] Accordingly, the defendant's motion to dismiss Count XII is denied.

*Conclusion*

For the foregoing reasons, the defendant's motions are denied in their entirety.

---

**15.** The defendant's last objection to Count XII is equally meritless. The issuance of a grand jury subpoena *to a grand jury witness is not an* essential element of a § 1503 violation. In any event, the defendant believed that Dembitz had been subpoenaed and he tried to influence his testimony by encouraging him to lie to the

Grand Jury thereby attempting to impede the due administration of justice. The fact that the defendant's endeavor could not possibly succeed is immaterial. *See Osburn v. United States,* 385 U.S. 323, 332–33, 87 S.Ct. 429, 434–35, 17 L.Ed. 2d 394 (1966); *United States v. Brimberry,* 744 F.2d 580, 583 (7th Cir.1984).