Jane **TODARO, M.D., as Secretary and Treasurer of the North American Society for Pediatric Gastroenterology, formerly, an unincorporated association, presently, a corporation organized under the laws of Washington, D.C., Charlene Spiegelman, as President and Treasurer of the First International Conference for Jewish Singles, an unincorporated association, George Jensen, Kim Radcliffe and Gordon Butler, Plaintiffs,**

v.

**ORBIT INTERNATIONAL TRAVEL, LTD., Joe L. Mayes, Sr., Joe D. Mayes, Jr. and Mayes International, Inc., Defendants.**

**No. 85 Civ. 9953 (PKL).**

United States District Court, S.D. New York.

Jan. 31, 1991.

Carole S. Powell, Nutley, N.J., for plaintiffs.

Sargent & Sargent, New York City (Hale C. Sargent, of counsel), for defendants Joe L. Mayes, Sr., Joe D. Mayes, Jr., and Mayes Intern., Inc.

## ORDER AND OPINION

LEISURE, District Judge:

This is an action for compensatory, punitive and treble damages, and other relief, arising from alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et. seq.*, as well as numerous pendent state law claims. Defendants Joe L. Mayes, Sr. ("Mayes Sr."), Joe D. Mayes, Jr. ("Mayes Jr."), and Mayes International, Inc. ("Mayes International") (collectively "defendants"), have now moved for an order (a) dismissing the first and second counts of the amended complaint (the "RICO counts"), pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim, and Fed.R.Civ.P. 9(b), for lack of particularity; (b) dismissing the pendent state law claims, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction; and (c) in the alternative, pursuant to Fed.R.Civ.P. 12(c), for judgment on the pleadings. For the reasons set forth below, defendants' motion is denied in its entirety.

### Background

This action arises from the alleged activities of defendants Mayes Sr. and Mayes

Jr., (collectively, the "individual defendants"), both in their individual capacities and as principal stockholders, directors and chief executive officers of defendants Mayes International and Orbit International Travel, Ltd. ("Orbit"), over which they are alleged to have had "total control." Amended Complaint ¶ 8. Orbit was a travel agency and "meeting planning organization," with its principal place of business in Dallas, Texas. Amended Complaint ¶ 9.

The amended complaint alleges that in early 1983, Mayes Sr. represented to plaintiff George Jensen ("Jensen") that Mayes Sr. had an opportunity to purchase 80% of Orbit for $70,000. It was agreed that each would contribute $35,000, and thus each would own 40% of Orbit. Mayes Sr. thereafter stated that he had paid the full $70,000, and asked Jensen for his share, plus additional funds to be lent to Orbit by Jensen. Jensen then gave Mayes Sr. $35,000, representing his share of the alleged purchase price, and lent Orbit $10,000. Amended Complaint ¶ 23. The actual *total* purchase price for the entire 80% share of Orbit did not, however, exceed $35,000. Amended Complaint ¶ 24.

Toward the end of 1983, Mayes Sr. and Jensen agreed that Mayes Sr. would repurchase the Orbit shares from Jensen for $50,000. The payment was to be made by Mayes Sr. after a company in which both men were involved "went public." Although the company went public in November 1984, and Jensen thereafter transferred his shares of Orbit to Mayes Sr., Mayes Sr. never paid Jensen the $50,000 purchase price. Amended Complaint ¶ 25.

The amended complaint further alleges that in or about mid–1983, Orbit opened an office in New York City, employing approximately five persons, to which the individual defendants traveled on numerous occasions to conduct business on behalf of Orbit. Amended Complaint ¶ 10. In or about September 1984, plaintiff North American Society for Pediatric Gastroenterology ("NASPG") approached Orbit for the purpose of having Orbit organize and run a large medical conference (the "NASPG conference") in May 1985. Amended Complaint ¶ 11. Prior to the NASPG conference, Orbit received from NASPG in excess of $101,000, to be used solely for certain expenses related to the NASPG conference. The funds were deposited in a designated account at Marine Midland Bank. Amended Complaint ¶ 12. NASPG gave Orbit these funds allegedly in reliance upon false statements made by Orbit that the funds would only be applied to NASPG conference expenses. Amended Complaint ¶ 12.

In late 1984, Orbit approached plaintiff International Conference for Jewish Singles ("ICJS") with a proposal to organize and run a conference in August 1985 (the "ICJS conference"). Amended Complaint ¶ 17. Orbit subsequently received approximately $13,000 from ICJS to cover certain expenses related to the ICJS conference, after allegedly falsely stating that the funds would be used only for such expenses. Amended Complaint ¶ 18.

The NASPG conference took place as scheduled; however, Orbit allegedly applied only $36,000 of the $101,000 received toward NASPG conference expenses, failing to pay various expenses, and refusing to refund the $65,000 difference. Amended Complaint ¶ 13. The ICJS conference also took place as scheduled; however, the majority of the funds were not applied for the purposes for which they were deposited. Amended Complaint ¶ 21. On July 22, 1985, Mayes Jr. allegedly traveled to New York City, summarily closed the Orbit office and dismissed Orbit's employees. In the months preceding the closing of the Orbit New York office, the individual defendants had allegedly removed the funds deposited by NASPG and ICJS with Orbit through a scheme involving mail and wire transfers, numerous telephone conferences, and travel between Texas and New York. Amended Complaint ¶ 15.

The amended complaint also alleges that, during the period from 1983 through early 1985, Orbit was a profitable business. Amended Complaint ¶ 29. However, the individual defendants allegedly conducted a fraudulent scheme to convert for their own use substantial funds of Orbit, by which they substantially "pillaged" Orbit.

Amended Complaint ¶¶ 29, 30. In January 1986, Orbit filed a petition for bankruptcy, which plaintiffs allege was in numerous respects false and fraudulent, in violation of 18 U.S.C. § 152. Amended Complaint ¶ 36. Thereafter, in May 1986, Mayes Sr., allegedly in an attempt to hide assets and defraud creditors, including plaintiffs, transferred his principal asset, a promissory note, to the "Mayes Charitable Trust." The note (referred to in the amended complaint and herein as the "Strange Note," it having originally been given to Mayes Sr. by a Mr. and Mrs. Strange), was worth approximately $300,000 at the time Mayes Sr. transferred it to the Mayes Charitable Trust. Plaintiffs allege that this transfer violated 18 U.S.C. § 152. Amended Complaint ¶ 38.

The complaint in this action was originally filed December 23, 1985. The complaint was amended June 15, 1987, to add plaintiffs Jensen, Kim Radcliffe, and George Butler, all former stockholders of Orbit, and to add the allegations regarding conversion of corporate funds and bankruptcy fraud. Defendants filed an answer to the amended complaint on June 29, 1987. The instant motion seeks dismissal of the amended complaint on a number of grounds. In particular, the motion seeks an order (a) dismissing the first and second counts of the amended complaint (the "RICO counts"), pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim, and Fed.R.Civ.P. 9(b), for lack of particularity; (b) dismissing the pendent state claims, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction; and (c) in the alternative, pursuant to Fed.R.Civ.P. 12(c), for judgment on the pleadings.[1]

*Discussion*

1) Sufficiency of the Predicate Act Fraud Claims

Defendants first argue that plaintiffs' fraud claims, which are alleged to be predicate acts under the RICO statute, are insufficient as a matter of law and thus must be dismissed, pursuant to Fed.R.Civ.P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980))).

■ Thus, a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Morales v.*

---

**1.** Fed.R.Civ.P. 12(b) provides that a motion brought pursuant to that rule must be brought "before pleading if a further pleading is permitted." In the case at bar, defendants answered the amended complaint before bringing this motion. However, Fed.R.Civ.P. 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Thus, to the extent defendants' motion seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(1), that motion is not untimely. In addition, Fed.R.Civ.P. 12(h)(2) provides that the defense of failure to state a claim upon which relief can be granted, typically raised pursuant to Fed.R.Civ.P. 12(b)(6), may be raised after the pleadings are closed by a motion for judgment on the pleadings. *See* Fed.R.Civ.P. 12(c). Thus, defendants' Fed.R.Civ.P. 12(b)(6) motion is in fact brought via Fed.R.Civ.P. 12(h)(2) and Fed.R.Civ.P. 12(c). Nevertheless, "the same standards that are employed for dismissing a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) are applicable here," where the motion is technically a motion under Fed.R.Civ. 12(c). *Ad–Hoc Committee of the Baruch Black and Hispanic Alumni Association v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987); *see also* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1367, at 514–15 (2d ed. 1990). Accordingly, this opinion shall refer to defendants' motion to dismiss for failure to state a claim as one brought pursuant to Fed.R.Civ.P. 12(b)(6).

*New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must limit its analysis to the four corners of the complaint, *see Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991), and must accept the plaintiff's allegations of fact as true, together with such reasonable inferences as may be drawn in his favor. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Murray v. Milford,* 380 F.2d 468, 470 (2d Cir.1967); *Hill v. Sullivan,* 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("all allegations in plaintiffs' amended complaint must be accepted as true and liberally construed."); *see also Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686. Federal Rule of Civil Procedure 8(a) requires only a " 'short and plain statement of the claim' that will give the defendant fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley, supra,* 355 U.S. at 47, 78 S.Ct. at 103 (quoting Fed.R.Civ.P. 8(a)).[2]

Defendants assert, relying solely on Black's Law Dictionary, that plaintiffs' fraud claims are insufficient as a matter of law because "the essence of fraud is a false representation," Memorandum of Law in Support of Motion to Dismiss RICO Causes of Action and Pendent State Claims or for Judgment on the Pleadings ("Defendants' Memorandum") at 3, and the allegations in the amended complaint *"do not allege false representations by the individual defendants or by Mayes International, Ltd.* Rather, they allege false representations by 'Orbit.' " Defendants' Memorandum at 4 (emphasis in original). However, it is well established that under the mail fraud and wire fraud statutes, 18 U.S.C. § 1341 and 18 U.S.C. § 1343, respec-

tively, which constitute RICO predicate acts pursuant to 18 U.S.C. § 1961, the fraudulent mailings and communications need not have been directly or personally performed by the defendant. Rather, it is sufficient that the defendant "knew that the use of interstate mail and wire services was a reasonably foreseeable consequence of the scheme." *United States v. Carpenter,* 791 F.2d 1024, 1035 (2d Cir.1986) (citing *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954)), *aff'd,* 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987); *see also United States v. Bortnovsky,* 879 F.2d 30, 39 (2d Cir.1989) (" 'A defendant need not actually intend, agree to or even know of a specific mailing to "cause" mail to be sent as long as he or she "does an act with knowledge that the use of mails will follow in the ordinary course of business, or where such can reasonably be foreseen." ' ") (quoting *United States v. Bucey,* 691 F.Supp. 1077, 1088–89 (N.D.Ill.1988) (quoting *Pereira, supra,* 347 U.S. at 8–9, 74 S.Ct. at 362–63)); *Connors v. Lexington Insurance Co.,* 666 F.Supp. 434, 451 (E.D.N.Y.1987). The allegations in the amended complaint, including allegations that the individual defendants exercised "total control over all the activities of" Orbit and Mayes International, Amended Complaint ¶ 8, that Mayes International received some of the funds improperly taken from plaintiffs by Orbit, Amended Complaint ¶ 8, that the fraudulent representations were part of a scheme by defendants to defraud plaintiffs, Amended Complaint ¶¶ 12, 18, and that Mayes Jr. was personally involved in this scheme, Amended Complaint ¶¶ 15, 19, 22, permit the Court to conclude for the purpose of deciding this

---

**2.** The Court need not, and will not, consider the various affidavits submitted in opposition to defendants' motion to dismiss, in reaching its conclusions. It is abundantly clear that the Court may not consider matters outside of the complaint in ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6). *Festa, supra,* 905 F.2d at 37. To the extent the Court considers such materials, " 'the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....' " *Festa, supra,* 905 F.2d at 37–38 (quoting Fed.R.Civ.P. 12(b)). In the case at bar, the Court will not consider matters outside the

amended complaint, and thus declines to convert the present motion into a motion for summary judgment.

Likewise, the Court will not consider the numerous factual allegations set forth for the first time in plaintiffs' memorandum opposing the motion. It is a basic principle that a complaint may not be amended by the plaintiff's brief filed in opposition to a motion to dismiss. *See Hartford Fire Insurance Co. v. Federated Department Stores, Inc.,* 723 F.Supp. 976, 987 (S.D.N.Y. 1989); *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989).

motion, that it was reasonably foreseeable that the fraudulent mailings and communications would be made. *See Carpenter, supra,* 791 F.2d at 1035. Therefore, plaintiffs have stated predicate act mail and wire fraud claims sufficient to survive defendants' motion to dismiss.

2) Particularity of the Predicate Act Fraud Claims

■ Defendants next argue that plaintiffs' mail and wire fraud allegations are not pleaded with the particularity required by Fed.R.Civ.P. 9(b). However, as plaintiffs correctly note, defendants filed a detailed answer to the amended complaint on June 29, 1987, and did not raise a Rule 9(b) objection in that answer, nor did they make such a motion until the present motion was brought. "The specificity requirements of Fed.R.Civ.P. 9(b) have been imposed to ensure that a defendant is apprised of the fraud claimed in a manner sufficient to permit the framing of an adequate responsive pleading. A party who fails to raise a 9(b) objection normally waives the requirement." *United National Records, Inc. v. MCA, Inc.,* 609 F.Supp. 33, 39 (N.D.Ill. 1984); *see also Stonehill v. Security National Bank,* 68 F.R.D. 24, 44 n. 38 (S.D.N.Y.1975); 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1394 at 778 (2d ed. 1990); 2A J. Moore, *Moore's Federal Practice* ¶ 9.03 at 9–35 (2d ed. 1984) (and cases cited therein). Consequently, defendants have waived any objection to the fraud claims on the ground of insufficient particularity.

3) Sufficiency of the Predicate Act Claims Under 18 U.S.C. § 2314 and 18 U.S.C. § 2315

■ Plaintiffs have alleged as additional RICO predicate acts claims that defendants violated 18 U.S.C. § 2314, pertaining to the transportation of stolen or fraudulently converted or taken property, and 18 U.S.C. § 2315, pertaining to the receipt of such property. Defendants have now moved to dismiss these predicate act claims, asserting that NASPG and ICJS are, at most,

creditors of Orbit, and that no property interest of those plaintiffs was interfered with.

It is clear that, in order for §§ 2314 and 2315 to be applicable, the relevant offense must be one "against another person's proprietary or possessory interests in property. This does not mean that the victim must be shown to have had good title, but it does mean that [there must have] been some sort of interference with a property interest." *United States v. Long Cove Seafood, Inc.,* 582 F.2d 159, 163 (2d Cir. 1978); *see also United States v. Bennett,* 665 F.2d 16, 22 (2d Cir.1981); *United States v. Carman,* 577 F.2d 556, 565 (9th Cir.1978) ("the 'stealing,' 'conversion,' or 'taking' must be from one having the attributes of an owner."); *United States v. Brandon,* 651 F.Supp. 323, 325–26 (W.D. Va.1987).

Defendants' argument that NASPG and ICJS had no such property interest in the monies they deposited with Orbit, is, however, misplaced. Although an argument might conceivably be made that if the funds were deposited with Orbit on a legitimate basis, they would no longer belong to NASPG and ICJS,[3] in the instant case, at the time NASPG and ICJS were initially allegedly defrauded, the funds clearly belonged to those plaintiffs. The cases cited by defendants in support of their motion to dismiss are inapposite, involving property which, *at the time* it was stolen, or fraudulently converted or taken, did not belong to another person. Plaintiffs have thus sufficiently alleged that property belonging to NASPG and ICJS was fraudulently converted or taken from them, and thus those claims may not be dismissed for failure to state a claim.

4) Sufficiency of the Allegations Pertaining to the Strange Note

■ Defendants next argue that the allegations in the amended complaint regarding the Strange Note should be dismissed as lacking a sufficient nexus with the RICO enterprise in this action. Section

---

**3.** The Court expresses no opinion as to the correctness of such an argument.

1962(c) of title 18 prohibits the conduct of an enterprise's affairs "through" a pattern of racketeering activity. Accordingly, courts in this Circuit have required an adequate nexus between the alleged racketeering activity and the enterprise's affairs. *See, e.g., United States v. Tillem,* 906 F.2d 814, 822 (2d Cir.1990); *United States v. Le Roy,* 687 F.2d 610, 616–17 (2d Cir.1982), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *Jim Forno's Continental Motors, Inc. v. Subaru Distributors Corp.,* 649 F.Supp. 746, 752 (N.D.N.Y. 1986). "[O]ne conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." *United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981); *see also Tillem, supra,* 906 F.2d at 822 (quoting *Scotto, supra,* 641 F.2d at 54).

This test has been interpreted liberally. "[T]he statute 'does not define [the] connection by distinguishing between predicate acts which play a major or a minor role, or any role at all, in what might be seen as the usual operations of the enterprise; nor does it require that such acts be in furtherance of the enterprise....' The statute, then declines to define in quantitative terms the degree of interrelationship between the pattern of racketeering and the conduct of the enterprise's affairs." *Scotto, supra,* 641 F.2d at 54 (quoting *United States v. Stofsky,* 409 F.Supp. 609, 613 (S.D.N.Y.1973), *aff'd,* 527 F.2d 237 (2d Cir.1975), *cert. denied,* 429 U.S. 819, 97 S.Ct. 65, 66, 50 L.Ed.2d 80 (1976)). Thus, the courts have not required that "the predicate acts 'concerned or related to the operation or management of the enterprise' and '[a]ffected the affairs of the [enterprise] in its essential functions.'" *Scotto, supra,* 641 F.2d at 54 (quoting appellant's proposed jury charge). In addition, "'Section 1962(c) nowhere requires proof regarding advancement of the [enterprise's] affairs by the defendant's activities, or proof that the [enterprise] itself is corrupt, or proof that the [enterprise] authorized the defendant to do whatever acts form the basis for the charge. It requires only that the government establish that the defendant's acts were committed in the conduct of the [enterprise's] affairs.'" *Scotto, supra,* 641 F.2d at 54 (quoting *United States v. Field,* 432 F.Supp. 55, 58 (S.D.N.Y.1977), *aff'd,* 578 F.2d 1371 (2d Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978)).

Accepting the allegations in the amended complaint as true, as the Court must, *see Papasan, supra,* 478 U.S. at 283, 106 S.Ct. at 2943, the Court finds that the transfer of the Strange Note by Mayes Sr. to the "Mayes Charitable Trust," alleged in the amended complaint to be part of a fraudulent scheme to hide his assets and defraud plaintiffs, is without question sufficiently related to the activities of the enterprise in this action. The amended complaint alleges an enterprise "the common purpose of which was to defraud plaintiffs, and to conceal and unlawfully take their monies." Amended Complaint ¶ 33. It requires no stretch of the imagination to view the allegedly fraudulent transfer of the Strange Note by Mayes Sr., less than five months after the filing of the original complaint in this action, as closely related to the ongoing activities of the enterprise. Indeed, such a transfer of assets borders on the predictable in a case such as this, where the unifying theme is alleged to be the defrauding of persons or organizations having business relationships with the members of the enterprise. Under the rule of *Scotto* and its progeny, the transfer of the Strange Note is thus sufficiently related to the activities of the enterprise in this action to withstand the instant motion to dismiss. *See United States v. Simmons,* 923 F.2d 934, 951–952 (2d Cir.1991).

5) Sufficiency of the RICO "Pattern" Allegations

To state a claim under the RICO statute, a plaintiff must allege a "pattern" of racketeering activity, 18 U.S.C. § 1962(c), which

is defined by the statute as two or more acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Determining whether a "pattern" exists within the meaning of the RICO statute is not, however, as simple as mechanically applying the definition provided by the statute. Rather, as the Supreme Court noted in *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), "while two acts are necessary, they may not be sufficient." More recently, the Supreme Court further expounded upon the pattern requirement in RICO cases, holding that "RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989) (emphasis in original). There are thus two distinct, although overlapping, constituents of RICO's pattern requirement. Relying on *H.J. Inc.*, defendants in the present action argue that plaintiffs have failed to allege adequately a "pattern" of racketeering activity.

The Supreme Court in *H.J. Inc.* held that, as to the "relatedness" of the predicate acts, "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc., supra*, 109 S.Ct. at 2901; *see also United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir.) ("An interrelationship between acts, suggesting the existence of a pattern, may be established in a number of ways. These include proof of their temporal proximity, or common goals, or similarity of methods, or repetitions."), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989) and —— U.S. ——, 110 S.Ct. 56, 107 L.Ed.2d 24, 25 (1989). "[T]he involvement of similar participants is sufficient to demonstrate a relationship among the predicate acts." *Simmons, supra*, at 951.

In the action now before the Court, the allegations in the amended complaint clearly support a finding that the predicate racketeering acts share, at minimum, a similar purpose (to carry out a scheme to defraud plaintiffs of certain funds and thereafter protect those funds from judgment) and similar participants (the individual defendants and the corporations over which they exercised "total control"). These similarities are more than sufficient to lead this Court to find that the predicate acts in this case are "related," as that term is defined by the Supreme Court with respect to the RICO "pattern" requirement. *See H.J. Inc., supra*, 109 S.Ct. at 2900–01; *Simmons, supra*, at 951; *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir.1989); *Friedman v. Arizona World Nurseries Limited Partnership*, 730 F.Supp. 521, 547–48 (S.D. N.Y.1990).

With respect to the "continuity" element of the test for a RICO "pattern," the Supreme Court has held that " '[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *H.J. Inc., supra*, 109 S.Ct. at 2902. Although predicate acts extending over a relatively short period, such as a few weeks or months, may be considered insufficient to establish continuity, *see H.J. Inc., supra*, 109 S.Ct. at 2902; *Azurite Corp. Ltd. v. Amster & Co.*, 730 F.Supp. 571, 581 (S.D.N.Y.1990) (predicate acts occurred over seven months); *West Mountain Sales, Inc. v. Logan Manufacturing Co.*, 718 F.Supp. 1084, 1087 (N.D.N. Y.1989) (predicate acts occurred over four months), the predicate acts in the instant case allegedly extended over a period of more than three years and involved multiple acts, participants, and victims. The amended complaint thus contains allegations sufficient to establish the requisite "continuity" under the case law of the Supreme Court and Second Circuit. *See*

*Proctor & Gamble Co. v. Big Apple Industrial Buildings, Inc.*, 879 F.2d 10, 18 (2d Cir.1989) (predicate acts occurring over a period of nearly two years establish continuity), *cert. denied,* — U.S. —, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); *USA Network v. Jones Intercable, Inc.*, 729 F.Supp. 304, 317–18 (S.D.N.Y.1990) (citing cases); *Polycast Technology Corp. v. Uniroyal, Inc.*, 728 F.Supp. 926, 948 (S.D.N.Y.1989) (multiple acts involving multiple participants over eight-and-one-half month period establish continuity). Therefore, having adequately alleged both "relatedness" and "continuity," plaintiffs have sufficiently pleaded a "pattern" of racketeering activity.

**6) NASPG and ICJS Allegations of Damages**

■ Defendants next claim that, as to NASPG and ICJS, the amended complaint fails to allege cognizable damages because those plaintiffs "got what they bargained for. The conferences took place as scheduled. How were they damaged?" Defendants' Memorandum at 20. Yet even a cursory review of the amended complaint patently reveals explicit allegations that the funds for the NASPG conference and ICJS conference were given to Orbit in reliance on statements that such funds would be used only for conference-related purposes, Amended Complaint ¶¶ 12, 18, and that significant amounts of those funds were in fact not used for those purposes. Amended Complaint ¶¶ 13, 21. Hence, defendants' argument regarding the lack of sufficiency of the damages allegations is without merit.

**7) Constitutionality of the RICO Statute**

Leaving no stone unturned, defendants attack the RICO statute as unconstitutionally vague. Although the Supreme Court has yet to pass on this question, the Second Circuit has considered and rejected defendants' argument. *See United States v. Ruggiero*, 726 F.2d 913, 923 (2d Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *Scotto, supra*, 641 F.2d at 52; *United States v. Huber*, 603 F.2d 387, 393 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *see also Chase Manhattan Bank, N.A. v. Malatesta*, 1990 WL 96748, 1990 U.S.Dist. LEXIS 9222 (S.D.N.Y. July 6, 1990) ("The Second Circuit has rejected the argument that the RICO statute is unconstitutionally vague."); *United States v. Paccione*, 738 F.Supp. 691, 698–99 (S.D.N.Y.1990). Accordingly, defendants' motion to dismiss the amended complaint on the ground that the RICO statute is unconstitutionally vague is denied.

**8) The Pendent State Law Claims**

Had plaintiffs' RICO claims been dismissed by this Court, defendants sought the dismissal of plaintiffs' pendent state law claims. However, given the Court's decision not to dismiss the RICO claims in this action, dismissal of plaintiffs' pendent claims is not appropriate. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

*Conclusion*

For the reasons stated above, defendants' motion to dismiss the RICO counts in this action, as well as the pendent state law claims, is denied in its entirety.

SO ORDERED.