**NEW CRAWFORD VALLEY, LTD.,**
**a Colorado limited partnership,**
**Plaintiff–Appellant,**

v.

**Malcolm H. BENEDICT and David R. Allen, Defendants–Appellees.**

**No. 92CA0255.**

Colorado Court of Appeals,
Div. III.

March 25, 1993.

Rehearing Denied June 10, 1993.

Holley, Albertson & Polk, P.C., Eric E. Torgersen, Golden, for plaintiff-appellant.

Gibson, Dunn & Crutcher, Craig R. Carver, Monica T. Langley, Denver, for defendants-appellees.

Opinion by Judge CRISWELL.

Plaintiff, New Crawford Valley, Ltd., appeals the trial court's judgment dismissing the claims asserted by it against the defendants, Malcolm H. Benedict and David R. Allen. We affirm in part, reverse in part, and remand for further proceedings.

Prior to commencing this action, plaintiff, a limited partnership, had obtained a judgment against Benedict Nuclear Pharmaceuticals, Inc., a publicly held corporation (the corporation), and one of its subsidiaries based upon the corporation's execution of a note payable to plaintiff, secured by a deed of trust encumbering land sold by plaintiff to the corporation. In that litigation, the court found that the corporation, through its two principal officers and directors, who are defendants here, had engaged in a fraudulent scheme to have the corporation evade its obligations under the promissory note and to deprive plaintiff of its interest in the secured property. Hence, a judgment for damages was entered against the corporation and its subsidiary in an amount in excess of $1,000,-000 and those parties were directed to reconvey the real property to plaintiff.

Thereafter, plaintiff instituted this action against the individual defendants who, as noted, were the principal officers and directors of the corporation during the relevant period. Its complaint alleged that defendants had committed fraud, had engaged in a fraudulent conveyance, had entered into a civil conspiracy, had breached the fiduciary duty owed to plaintiff as one of the corpora-

tion's creditors, and had violated the Colorado Organized Crime Control Act (COCCA), § 18–17–101, et seq., C.R.S. (1986 Repl. Vol. 8B).

These claims were based, in part, on plaintiff's allegations that defendants had carried out four fraudulent schemes by: (1) pledging 300,000 shares of stock to a lender as collateral for a line of credit to the corporation, but intentionally deceiving the corporation's agent so as to receive duplicate certificates for the pledged shares; (2) requiring corporate employees to sign promissory notes in the amounts of their wages so that the corporation could evade its lawful income tax obligations; (3) carrying out the scheme, described in the court's findings and conclusions in the previous litigation, to deprive plaintiff of its interest in the realty that was the subject of that suit; and (4) diverting funds that were due to the corporation, which was then insolvent, to another corporation solely controlled by them. In addition, plaintiff alleged that, throughout these defendants' association with the corporation, they voted themselves unapproved loans (most of which were never repaid), excessive salaries and bonuses, warrants and options to acquire corporate stock at a fraction of its market price, and other personal perquisites, all to the detriment of the corporation's creditors and its shareholders.

In response to this complaint, defendants filed a motion to dismiss, asserting, among other things, that the common law fraud and civil conspiracy claims alleged, being based upon the transactions that were the subject of the previous litigation, were barred by the previous judgment against the corporation and that the remaining claims were not pleaded with sufficient specificity. The trial court granted defendants' motion and entered its judgment of dismissal without providing to plaintiff an opportunity to amend its complaint.

In doing so, it held that, to the extent that the plaintiff's claims relied upon any of the transactions and occurrences which formed the basis for the previous judgment against the corporation and the subsidiary, the doctrine of *res judicata* and its prohibition against "splitting" a cause of action barred

the assertion of like claims against the two defendants here. The court also concluded that, to the extent that any claims asserted were not barred by this doctrine, they were not well pleaded.

## I. *Res Judicata.*

The doctrine of *res judicata* precludes the assertion of a claim if it was or could have been asserted in previous litigation that resulted in a determination on the merits. *Pomeroy v. Waitkus*, 183 Colo. 344, 517 P.2d 396 (1973). Hence, if a claim based upon the same transaction is not asserted in previous litigation, it cannot be prosecuted in a subsequent lawsuit. *Shaoul v. Goodyear Tire & Rubber, Inc.*, 815 P.2d 953 (Colo.App.1990). *See Denver v. Block 173 Associates*, 814 P.2d 824 (Colo.1991).

■ However, *res judicata* will constitute such a bar only if, as between the prior and present suits, there is an: (1) identity of subject matter; (2) identity of cause of action; (3) identity of parties to the action; and (4) identity of capacity in the persons for which, or against whom, the claim is made. *State Engineer v. Smith Cattle, Inc.*, 780 P.2d 546 (Colo.1989).

Here, the trial court concluded that, because plaintiff had previously received a judgment against the corporation and its subsidiary, based on the same series of transactions upon which reliance was placed, in part, in the instant complaint, but had not joined defendants as parties in that previous litigation, plaintiff could not now sue defendants in an independent action. To do so, it concluded, would constitute the splitting of a single claim.

We conclude, however, that, because there was no identity of defendants between the first lawsuit and the present one, the doctrine of *res judicata* cannot properly be applied to the claims asserted against the individual defendants in this case.

The extent to which the successful prosecution of a claim in the first action will bar the assertion of a kindred claim in a later action depends, among other things, upon whether the party against whom the second

claim is being asserted was a party to the first action. Hence:

A judgment against *one* person liable for a loss does not terminate a claim that the injured party may have against *another* person who may be liable therefor.

Restatement (Second) of Judgments § 49 at 34 (1982) (emphasis supplied).

This is so because:

When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. If he brings an action against one of them, he is required to present all the evidence and theories of recovery that might be advanced in support of the claim against the obligor.... If he recovers judgment, his claim is 'merged' in the judgment so that he may not bring another action on the claim against the obligor whom he has sued. But the claim against others who are liable for the same harm is regarded as separate. Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor.

The injured person has a similar option when the conduct of the actual wrongdoer is legally chargeable to more than one person, as when both a servant and his master are liable for the acts of the servant under the principle of respondeat superior.

Restatement (Second) of Judgments § 49 comment a at 34 (1982). *See also Pomeroy v. Waitkus, supra,* 183 Colo. 344, 350, 517 P.2d 396, 399 ("it would be unfair to preclude a party from litigating an issue merely because he could have litigated it against a *different* party" (emphasis supplied)).

Thus, a judgment against one partner does not preclude the assertion of a claim, based on the same transaction, against another partner. *Carter v. Forstrom,* 80 Or.App. 213, 722 P.2d 23 (1986). Likewise, a judgment against a borrower, based on a promissory note, does not preclude an action against the borrower's lawyers for fraud. *HGN Corp. v. Chamberlain, Hrdlicka, White, Johnson,* 642 F.Supp. 1443 (N.D.Ill. 1986). And, a judgment by a securities broker against one of the parties liable on an account will not preclude the assertion of a claim against another party liable on the same account. *Gill & Duffus Services, Inc. v. A.M. Nural Islam,* 675 F.2d 404 (D.C.Cir. 1982).

■ Further, for purposes of the doctrine of *res judicata,* a corporation is treated as a legal entity separate from and independent of its officers, directors, and stockholders. *See* Restatement (Second) of Judgments § 59 (1982). Therefore, a judgment against a corporation will not preclude the assertion of claims against that corporation's directors, even though all claims are based upon the same incidents. *Minton v. Cavaney,* 56 Cal.2d 576, 15 Cal.Rptr. 641, 364 P.2d 473 (1961).

The alleged personal liability of the defendants here arises out of their individual actions undertaken while they were officers and directors of the corporation. The corporation was liable for those actions under the precepts of *respondeat superior.* A judgment against the corporate master under this doctrine, however, does not preclude the assertion of like claims, based upon the same acts, against defendants themselves, who are individually liable for their personal actions.

The result in *Shaoul v. Goodyear Tire & Rubber, Inc., supra,* is not inconsistent with our conclusion here. There, plaintiff's claim had been *rejected* in the first action. Hence, he was precluded from asserting a like claim against a party who, while not joined in the first action was, nevertheless, in privity with such a party. *See Pomeroy v. Waitkus, supra;* Restatement (Second) of Judgments § 51 (1982).

We conclude, therefore, that the trial court erred in dismissing plaintiff's common law fraud and civil conspiracy claims which were based on the same transactions as was its previous favorable judgment against the corporation.

II. *The Breach of Fiduciary Duty Claim.*

Plaintiff next contends that the trial court erred in dismissing its claim that defendants, as the directors of the corporation, breached

a fiduciary duty that they owed to plaintiff as one of the corporation's creditors. Again, we agree.

The trial court based its dismissal of this claim on its conclusion that corporate directors owe no fiduciary duty to creditors of a corporation. We conclude, however, that, while it may be fairly debatable whether the duty owed is that of a fiduciary nature, nevertheless, the directors of a corporation, in the circumstances alleged in plaintiff's complaint, owe a duty to corporate creditors the violation of which was sufficiently pleaded in that complaint.

If a corporation is insolvent, its directors are deemed to be trustees for it and for its creditors. *Crowley v. Green*, 148 Colo. 142, 365 P.2d 230 (1961); *see also Fishel v. Goddard*, 30 Colo. 147, 69 P. 607 (1902).

The duty owed in such circumstances requires that the directors not transfer corporate property for their own benefit and, thus, defeat a creditor's claim. And, if a director breaches this duty, he or she is personally liable to the creditor for such malfeasance. *Collie v. Becknell*, 762 P.2d 727 (Colo.App.1988).

Here, plaintiff alleged that, at the time when the corporation was insolvent, defendants caused a corporate debtor to make payments due to the corporation to another corporation in which defendants were the sole shareholders. It was also alleged that this action was taken to defeat the claims of plaintiff and other creditors.

These allegations were sufficient to plead a claim against defendants for breach of their duty as directors of an insolvent corporation to the corporation's creditors. Hence, it was error to dismiss this claim at the pleading stage of the proceedings.

III. *The Fraudulent Conveyance Claim.*

Plaintiff's fraudulent conveyance claim was based upon the same alleged diversion of funds as was its claim of breach of fiduciary duty. Plaintiff contends that the trial court should not have dismissed this claim. We disagree, but we conclude that plaintiff should be given an opportunity to amend its pleadings upon this subject.

The trial court dismissed this claim because (1) plaintiff did not allege that it had suffered any detriment in an unsuccessful collection effort because of the alleged fraudulent conveyance and (2) plaintiff's claim did not seek to void the conveyance. The court concluded that, in the absence of such allegations, plaintiff's claim constituted an action only for post-judgment relief that properly should be requested only in the previous action against the corporation.

To survive a motion to dismiss a fraudulent conveyance claim, a plaintiff need only allege that it is a judgment creditor and that a fraudulent conveyance has deprived the transferor of funds which the plaintiff could use to satisfy the debt. Hence, there is no requirement that a fraudulent conveyance claim be asserted in the same proceedings in which the judgment is entered against the transferor. *See Miller v. Kaiser*, 164 Colo. 206, 433 P.2d 772 (1967).

We agree that the voiding of the conveyance is, generally, the appropriate remedy in such cases; it is the remedy provided for by § 38–10–117, C.R.S. (1982 Repl.Vol. 16A).

However, § 38–10–117 is merely a codification of the court's equity powers under the common law. *Miller v. Kaiser, supra.* And, there are special circumstances in which a court's equity powers permit it to hold a fraudulent transferee personally liable for damages resulting from the conveyance:

> Such special circumstances generally involve some activity of the fraudulent transferee in causing the property involved to be depreciated in value while in his hands or causing the property, either wholly or in part, to be placed beyond the reach of the court.... If a money judgment ... will accomplish the desired result, it will be imposed in favor of the judgment creditor.... A personal judgment is to restore lost value in the property fraudulently conveyed, and is in lieu of returning this property fully to its prior ownership in the fraudulent transferor.

*Epcon Co. v. Bar B Que Baron International, Inc.,* 32 Colo.App. 393, 397, 512 P.2d 646, 648 (Colo.App.1973).

Here, plaintiff alleged that cash was transferred from the corporation to another corporation to frustrate plaintiff's efforts to collect from the corporation. However, plaintiff did not allege that, because of special circumstances, the usual remedy of voiding the fraudulent conveyance would not be adequate. Thus, these allegations are insufficient to invoke the trial court's equity power to impose personal liability upon defendants as fraudulent transferees.

■ However, this is simply a pleading deficiency at this point, and plaintiff is entitled to amend its complaint, if possible, to remedy such deficiency. C.R.C.P. 15(a) (a party may amend pleading once before responsive pleading is filed, as a matter of right); *Passe v. Mitchell,* 161 Colo. 501, 423 P.2d 17 (1967) (judgment of dismissal should not enter under C.R.C.P. 12(b) unless plaintiff is given an opportunity to amend).

Therefore, while we agree that plaintiff's present pleading does not state a proper claim for the relief requested by it, because we are remanding the cause to the trial court, plaintiff should be given an opportunity to amend its complaint to allege special circumstances, if it can properly make such an allegation.

## IV. *The "COCCA" Claims.*

Plaintiff's final contention is that the trial court erred in dismissing its claims under the Colorado Organized Crime Control Act (COCCA), § 18–17–101, et seq., C.R.S. (1986 Repl.Vol. 8B). We also agree with this contention.

COCCA imposes severe penalties, both civil and criminal, against those who profit from a "pattern of racketeering." Each of the four activities prohibited by COCCA consists of a different method of using a "pattern of racketeering" to influence an "enterprise." Section 18–17–104, C.R.S. (1986 Repl.Vol. 8B).

Section 18–17–104(1), C.R.S. (1986 Repl. Vol. 8B) prohibits a person who knowingly *receives* the proceeds of a pattern of racketeering from *using or investing* those proceeds in real estate or in the establishment or operation of an enterprise.

Section 18–17–104(2), C.R.S. (1986 Repl. Vol. 8B) is broader; it proscribes the *acquisition or maintenance* of any interest in or control of an enterprise or real property through a pattern of racketeering, but it does not require that this be accomplished by the investment of income.

Section 18–17–104(3), C.R.S. (1986 Repl. Vol. 8B) is broader still in that it prohibits a person employed by or associated with an enterprise from *knowingly conducting or participating* in the enterprise through a pattern of racketeering, without specifying the nature of such conduct or participation.

Finally, § 18–17–104(4), C.R.S. (1986 Repl. Vol. 8B) forbids any conspiracy or endeavor to violate either § 18–17–104(1), (2), or (3).

Plaintiff's complaint here asserted a claim under each of the foregoing subsections. The trial court rejected plaintiff's claim asserted under § 18–17–104(1) because it concluded that plaintiff had not pleaded with sufficient particularity that defendant had received proceeds from a pattern of racketeering. The court also dismissed the claims under § 18–17–104(2) and (3) because it determined that plaintiff had failed to allege with adequate particularity the injuries sustained by any of the alleged victims. Finally, the court determined that, because no claim under § 18–17–104(1), (2), or (3), which required a completed act, could be established, no claim of conspiracy or attempt to violate the statute could be asserted under § 18–17–104(4). We reach somewhat differing conclusions.

### A. *The General Requirements.*

Because COCCA was modeled after the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq. (1988), federal cases interpreting RICO, while not dispositive, are instructive upon similar issues under COCCA. *People v. Chaussee,* 847 P.2d 156 (Colo.App.1992). *See also Vandermee v. District Court,* 164 Colo. 117, 433 P.2d 335 (1967) (if Colorado adopts a statute from another jurisdiction, cases inter-

preting statute before its adoption are strongly presumptive of legislative intent; cases decided after adoption are persuasive).

■ Under these decisions, if the "predicate acts" underlying a plaintiff's COCCA claim are fraudulent acts, the circumstances must be pleaded with the particularity required by C.R.C.P. 9(b). *See Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982 (10th Cir.1992); *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325 (N.D.Ill.1986). We agree that this should be so. Hence, because plaintiff's complaint was based upon fraudulent acts, its sufficiency must be judged by that standard.

■ COCCA defines a "pattern of racketeering" activity as "engaging in at least two acts of racketeering activity which are related to the conduct of the enterprise." Section 18–17–103(3), C.R.S. (1986 Repl.Vol. 8B). "Racketeering activity" occurs if one commits, attempts to commit, conspires to commit, or solicits, coerces, or intimidates another person to commit, any of the federal or Colorado crimes listed under § 18–17–103, C.R.S. (1986 Repl.Vol. 8B). That list includes those crimes listed by RICO, 18 U.S.C. § 1961(1)(A)–(D) (1988), including mail fraud, 18 U.S.C. § 1341 (1988), and wire fraud, 18 U.S.C. § 1343 (1988). It also includes the crimes of defrauding a secured creditor, § 18–5–206, C.R.S. (1986 Repl.Vol. 8B), and fraud upon the department of revenue as defined in § 39–21–118, C.R.S. (1992 Cum.Supp.).

Colorado has adopted the "pattern" analysis applied by the United States Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). *People v. Chaussee, supra.* This means that, in order to establish a "pattern" of racketeering activity, a plaintiff must show that the racketeering activities are "related" and that they amount to, or pose a threat of, "continual" criminal activity.

■ The prohibited predicate acts are "related" if the acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are related by distinguishing characteristics and are not isolated events." *H.J. Inc. v. North-*

*western Bell Telephone Co.*, 492 U.S. at 240, 109 S.Ct. at 2901, 106 L.Ed.2d at 208.

The "continuity" requirement focuses more on the period during which the acts occurred. This requirement is met by proof of either of two constellations of predicate acts: "open-ended" acts or "closed-ended" acts.

■ Closed-ended continuity consists of predicate acts all of which have occurred before trial. These acts must, nevertheless, have occurred over a substantial period. Predicate acts extending over a short period of time and threatening no future criminal conduct do not satisfy this requirement. *H.J. Inc. v. Northwestern Bell Telephone Co., supra.*

■ Open-ended continuity is established even if the action is commenced before the continuity requirement is met, if a threat of continued prohibited conduct can be shown to exist. *H.J. Inc. v. Northwestern Bell Telephone Co., supra.*

■ Here, because defendants were no longer officers or directors of the corporation at the time that suit was instituted, there could have been no threat of continued prohibited conduct. Hence, the factual circumstances alleged in plaintiff's complaint could not meet the requirements of open-ended continuity, and the continuity requirement, if present, is of the closed-ended variety. There must, therefore, be an adequate allegation that defendants' alleged racketeering activities occurred over a substantial period.

Plaintiff's allegations described the four alleged schemes summarized above. On their face, these allegations sufficiently alleged the perpetration of the predicate acts of tax evasion in violation of § 39–21–118 and § 39–22–604, C.R.S. (1992 Cum.Supp.); wire fraud, 18 U.S.C. § 1343 (1988), and defrauding a secured creditor, § 18–5–206, C.R.S. (1986 Repl.Vol. 8B).

These allegations also provided specific dates, places, and description of the acts relied upon. Hence, they were sufficient to meet the specificity requirements of C.R.C.P. 9(b). *Cf. O'Rear v. American Family Life Assurance*, 139 F.R.D. 418 (M.D.Fla.1991).

It is, therefore, irrelevant that plaintiff's other allegations respecting defendants' excessive salaries and bonuses, warrants and options, and unapproved loans were not alleged with particularity. The pleading being legally sufficient because of its particularity with respect to the necessary predicate acts, these other allegations may be particularized through the discovery process.

In *Todaro v. Orbit,* 755 F.Supp. 1229 (S.D.N.Y.1991), similar acts of malfeasance and fraud by corporate officials were held to be sufficient to satisfy both the relatedness and the continuity requirements. Although the various acts allegedly affected different victims in differing ways, the court concluded that: "The unifying theme is alleged to be the defrauding of persons or organizations having business relationships with members of the enterprise." *Todaro v. Orbit,* 755 F.Supp. at 1235. That is likewise true here.

Finally, because plaintiff alleges that the four described schemes were perpetrated over a period of nearly three years, we are satisfied that, at least from a pleading standpoint, plaintiff has satisfied the closed-ended continuity requirement.

### B. *Injury from a Pattern of Racketeering.*

Defendants assert that plaintiff's complaint did not sufficiently allege any injury resulting from the pattern of racketeering alleged. We disagree.

A plaintiff under COCCA need not show a "racketeering injury," that is, an injury which results specifically from an overreaching *pattern* of racketeering. It is sufficient, rather, to demonstrate one or more injuries resulting from each of the predicate acts. And, so long as resulting damage to the plaintiff is alleged, the plaintiff need not allege injury to him or her from each act. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, (1985).

In applying this principle, we conclude that plaintiff's allegation of income tax evasion adequately alleged an injury to the federal and state taxing authorities. Likewise, the allegation of the scheme for which the corporation was held to be liable alleged serious injury to plaintiff. Finally, the allegations of diversion of funds from the corporation to another necessarily involved injury to plaintiff and the corporation's other creditors.

However, we agree that the complaint does not allege with a sufficient degree of particularity how the obtaining of duplicate stock certificates resulted in injury to anyone. Again, however, upon remand plaintiff should be given an opportunity to amend its complaint, if it can properly do so.

### C. *The Other Statutory Requirements.*

We have concluded that plaintiff has alleged with the necessary particularity the existence of a pattern of racketeering of a continuing nature, predicate acts that are related, and injury resulting from that pattern of racketeering. Its complaint, however, must, in addition, allege circumstances that fall within any one or more of the four specific subsections of § 18–17–104.

#### 1. Section 18–17–104(1)

Section 18–17–104(1) requires that there be proceeds received from a pattern of racketeering which are then used to invest in or to operate another enterprise. We conclude that the allegations of the complaint sufficiently allege a violation of this statute.

One of the four schemes consisted of the improper diversion of funds from the corporation to a corporate entity controlled by defendants. Such diversion of funds can logically be considered to be either an investment in that corporate entity, which is alleged to be an "enterprise," or the use of such funds to operate that enterprise.

There is no requirement under § 18–17–104(1) that each of the predicate acts produce proceeds that are invested or used to operate an enterprise. As we read the pertinent statute, it is sufficient that at least one of the predicate acts forming the pattern of racketeering results in the production of proceeds that are thereafter invested or used to operate a separate enterprise.

Hence, because we have concluded that at least one of the predicate acts is alleged to have had this result, a violation of § 18–17–

104(1) has been properly stated, and it is unnecessary for us to consider whether any of the other predicate acts alleged could have had this result.

 Further, while we recognize that there must be some causal relationship between the investment made and plaintiff's injury, this means, simply, that the enterprise in which the proceeds are invested must have been used in the racketeering activity. *See Blue Cross of Western Pennsylvania v. Nardone*, 680 F.Supp. 195 (W.D.Pa.1988). Under plaintiff's allegations, however, the entity controlled by defendants was not only the recipient of the proceeds due to the corporation, but it was used as a part of the alleged scheme to divert those proceeds. At least for notice pleading purposes, we conclude that these allegations are sufficient to assert a violation of § 18–17–104(1).

### 2. Section 18–17–104(2).

 The requirements of § 18–17–104(2) are similar to those of § 18–17–104(1), except that, under this statute, it must be demonstrated that the proceeds derived from the pattern of racketeering were used to acquire or "maintain" an interest in an enterprise.

As we have concluded with respect to § 18–17–104(1), we are convinced that the allegations of plaintiff's complaint are sufficient to assert that proceeds from a pattern of racketeering were used in the operation of that enterprise which was controlled by defendants.

We are unable to discover any specific allegation that the use of such funds was for the purpose of acquiring or maintaining defendants' interest in that enterprise.

However, the federal courts have concluded that to "maintain" an interest in an enterprise is the substantial equivalent of "operating" an enterprise. *See Blue Cross of Western Pennsylvania v. Nardone, supra.* Thus, because we have concluded that plaintiff's allegations sufficiently allege the operation of an enterprise with proceeds from a pattern of racketeering under § 18–17–401(1), those allegations are also sufficient to assert a violation of § 18–17–104(2).

### 3. Section 18–17–104(3).

 Section 18–17–104(3) prohibits any persons associated with any enterprise from knowingly participating in such enterprise through a pattern of racketeering activity.

Here, we agree with plaintiff that its allegations were sufficient to state a claim under this statute as well. Plaintiff's allegations described four ways in which defendants allegedly participated in or conducted the affairs of the corporation as an "enterprise" through a pattern of racketeering. And, we have previously concluded that these allegations were sufficiently specific.

While a "nexus" between the racketeering activities and the affairs of the enterprise must be shown, this requirement is met if the predicate acts are carried out in the conduct of the enterprise's affairs. *See United States v. Scotto*, 641 F.2d 47 (2d Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981); *Todaro v. Orbit, supra.* The allegations of plaintiff's complaint here meet that requirement.

### 4. Section 18–17–104(4).

We also conclude that the trial court erred in determining that plaintiff's complaint did not state a claim under § 18–17–104(4).

Under 18 U.S.C. § 1962(d), a violation occurs if there is a "conspiracy" to violate any of the preceding three subsections. Hence, there need be no completed violation of 18 U.S.C. § 1962(a), (b), or (c) in order for there to be a violation of 18 U.S.C. § 1962(d).

 Section 18–17–104(4) makes it unlawful either to "conspire" or to "endeavor" to violate either § 18–17–104(1), (2), or (3). Hence, this statute can be violated by a single person; no conspiracy is required; an "endeavor" (attempt) is sufficient for a violation.

 Given these considerations, and in light of the right to assert alternate theories in a civil complaint, we hold that the allegation of a completed act under either § 18–17–104(1), (2), or (3) necessarily includes an allegation of an attempt to violate the pertinent subsection under § 18–17–104(4). *See Peo-*

**1374**

*ple v. Young,* 694 P.2d 841 (Colo.1985); *People v. Simien,* 656 P.2d 698 (Colo.1983).

It is true, at least as a general rule, that a mere conspiracy or attempt that does not result in a completed act will normally not constitute the basis for a civil claim because, unless a completed act occurs, there will normally be no resulting damage. *See Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937) (civil conspiracy not actionable per se; it is the consummation of conspiracy that causes damages).

Here, however, we have concluded that plaintiff's complaint sufficiently alleges a violation of § 18–17–104(1), (2), (3), each of which would constitute a completed act and the cause of damage. As a result, the allegation of a conspiracy or an endeavor to violate § 18–17–104(4) will properly allow evidence to explain a series of what might otherwise be considered to be unrelated acts and to impose liability upon one alleged conspirator for the actions of another. *See Morrison v. Goodspeed, supra.*

### D. *Other Grounds for Affirming.*

Both in the trial court and in this court defendants have advanced other arguments to support their assertion that plaintiff's pleadings are insufficient to allege a civil claim under COCCA. The trial court, however, did not pass upon any of these arguments.

In addition, at least some of defendants' assertions, such as their argument that the COCCA claims are barred by the pertinent statute of limitations, may require production of evidence for their resolution. *See Fort Collins–Loveland Water District v. City of Fort Collins,* 174 Colo. 79, 482 P.2d 986 (1971).

In light of these considerations, we conclude that it would be more appropriate to allow the trial court to pass upon defendants' other assertions in the first instance after appropriate discovery and the narrowing of the issues through pretrial proceedings. Hence, we have not considered these other issues in this opinion, and the parties and the trial court remain free to address them upon remand.

The judgment is affirmed to the extent that it dismissed any claim based upon a fraudulent conveyance, subject to plaintiff's right to amend its allegations respecting this claim upon remand. The judgment is otherwise reversed, and the cause is remanded to the trial court for further proceedings consistent with the views set forth in this opinion.

NEY and REED, JJ., concur.